1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

**BATHAEE DUNNE LLP**
Yavar Bathaee (CA 282388)
yavar@bathaeedunne.com
Andrew C. Wolinsky (CA 345965)
awolinsky@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
Tel.: (332) 322-8835

**KOREIN TILLERY PC**
Christopher Burke (CA 214799)
cburke@koreintillery.com
Walter Noss (CA 277580)
wnoss@koreintillery.com
Kate Lv (CA 302704)
klv@koreintillery.com
707 Broadway, Suite 1410
San Diego, CA 92101
Tel: (619) 625-5620

*Attorneys for Plaintiffs and the
Proposed Classes*

[Additional counsel listed on signature page]

**CRAVATH, SWAINE & MOORE LLP**
Antony L. Ryan (*pro hac vice*)
aryan@cravath.com
J. Wesley Earnhardt (*pro hac vice*)
wearnhardt@cravath.com
David H. Korn (*pro hac vice*)
dkorn@cravath.com
825 Eighth Avenue
New York, NY 10019-7475
Tel.: (212) 474-1000

**FARELLA BRAUN + MARTEL LLP**
Douglas R. Young (CA 073248)
dyoung@fbm.com
Christopher C. Wheeler (CA 224872)
cwheeler@fbm.com
Daniel A. Contreras (CA 329632)
dcontreras@fbm.com
One Bush Street, 9th Floor
San Francisco, CA 94104-4415
Tel.: (415) 954-4400

*Attorneys for Defendant
The Walt Disney Company*

16

17

18

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

19

20

21

22

23

24

25

26

27

28

HEATHER BIDDLE, et al.,

Plaintiffs,

v.

THE WALT DISNEY COMPANY,

Defendant.

Consolidated Case No. 5:22-cv-07317-EJD

**JOINT CASE MANAGEMENT
STATEMENT**

Hon. Edward J. Davila

Hearing Date: September 12, 2024
Time:          10:00 a.m.

Pursuant to Federal Rules of Civil Procedure 16 and 26, Civil Local Rule 16-9, the Standing Order for All Judges of the Northern District of California – Contents of Joint Case Management Statement, and the Court's Standing Order for Civil Cases, Plaintiffs and Defendant The Walt Disney Company ("Disney") respectfully submit this Joint Case Management Statement in advance of the initial case management conference scheduled for September 12, 2024, at 10:00 a.m.

## 1. **Jurisdiction and Service**

**Plaintiffs' Position:**

Plaintiffs assert that the Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 (federal question), 1332 (class action diversity jurisdiction), and 1337(a) (antitrust); and under 15 U.S.C. § 15 (antitrust).

**Defendant's Position:**

Defendant does not contest that the Court has subject-matter jurisdiction over this action.

## 2. **Facts**

**Plaintiffs' Position:**

This is an antitrust lawsuit against The Walt Disney Company ("Disney") to remediate and recover for Disney's anticompetitive agreements with direct competitors in the market for streaming live pay television ("SLPTV")—live television streamed over the Internet to paying subscribers. Plaintiffs are subscribers to YouTube TV and DirecTV Stream, two of the largest providers of live pay television streamed over the Internet. They bring suit under Section 1 of the Sherman Act and the antitrust or unfair competition laws of several states to, among other things, recover the doubling of their subscription prices as a result of Disney's anticompetitive agreements with YouTube TV, DirecTV Stream, and other SLPTV providers.

As described in the Consolidated Amended Class Action Complaint (ECF No. 59), Disney owns, operates, and controls the second-largest SLPTV provider, Hulu, which provides an SLPTV product called Hulu + Live TV. Disney also controls ESPN, the largest cost input into every SLPTV product in the United States. Disney operates these businesses (ESPN and Hulu) as a single economic entity, allowing it to negotiate horizontal, anticompetitive carriage agreements for ESPN and ESPN-related channels. Disney's carriage agreements with its SLPTV competitors contain two

terms that provide Disney pricing power over the entire market. First, Disney's carriage agreements contain language requiring that base or lowest-priced bundles offered by SLPTV providers must include ESPN. Second, Disney's carriage agreements include most-favored-nation ("MFN") clauses that put upward price pressure on every rival SLPTV product. Together, these carriage agreement mandates—which now cover all of Disney's leading competitors in the SLPTV Market—allow Disney to use ESPN and Hulu to set a price floor in the SLPTV Market and to inflate prices marketwide by raising the prices of its own products.

Since Disney acquired operational control over Hulu in May 2019, prices across the SLPTV Market, including for YouTube TV and DirecTV Stream, have doubled. This dramatic, marketwide price inflation has been led by Disney's own price hikes for Hulu + Live TV, and has directly tracked Disney's competitor-by-competitor negotiation of new SLPTV carriage agreements over this time period. As for YouTube TV, controlled by tech giant Alphabet, Inc. ("Google"), Google's carriage agreements with Disney have resulted in a more-than-100% price increase of YouTube TV's base package, from $35 to $73. For DirecTV Stream, controlled by television giant DirecTV and majority-owned by telecommunications giant AT&T, DirecTV's carriage agreements with Disney have also resulted in a more-than-100% price increase of DirecTV Stream's base package, from $35 to $75.

Disney's carriage agreements have had other anticompetitive effects. By increasing the cost of ESPN and forcing ESPN onto base bundles across the entire market, Disney is able to impose higher costs on rivals that it does not itself bear through its Hulu + Live TV product. Disney's agreements also strengthen the "Carriage Streaming Infrastructure Barrier to Entry," meaning the computational infrastructure and critical mass of carriage agreements with TV channel providers necessary for a would-be entrant to successfully compete in the SLPTV Market. Finally, Disney's agreements reduce consumer choice marketwide.

Plaintiffs, on behalf of themselves and classes of YouTube TV and DirecTV Stream subscribers from April 1, 2019, to the present, bring claims under Section 1 of the Sherman Act, 15 U.S.C. § 1, and the antitrust or unfair competition laws of Arizona, California, Florida, Iowa, Massachusetts, Michigan, Nevada, New York, North Carolina, and Tennessee based on the above

conduct.[1] Plaintiffs and the putative classes seek damages for the price overcharges they have experienced due to Disney's anticompetitive conduct. Plaintiffs also seek the following injunctive relief: (1) an injunction preventing Disney from enforcing its anticompetitive carriage agreements; and (2) an injunction requiring segregation or divestiture by Disney of its Hulu subsidiary, or in the alternative, of its business assets relating to Hulu + Live TV.

**Defendant's Position:**

Plaintiffs are subscribers to YouTube TV and DirecTV Stream, two internet-based linear television streaming services.  Plaintiffs do not claim to buy anything from Defendant or any company affiliated with Defendant.  Instead, Plaintiffs challenge terms in contracts between YouTube TV and DirecTV Stream, on the one hand, and ESPN Inc. ("ESPN"), a partially-owned Disney subsidiary, on the other, pursuant to which YouTube TV and DirecTV Stream purchase the right to distribute the ESPN network from ESPN.  Specifically, Plaintiffs' claims concern two alleged terms in those contracts:  (1) the "Base Term", which Plaintiffs allege requires YouTube TV and DirecTV Stream to include the ESPN network in the "base" package they offer; and (2) most favored nation ("MFN") clauses, which Plaintiffs allege require ESPN to offer YouTube TV and DirecTV Stream pricing terms at least as favorable as the terms ESPN offers to other linear television programming distributors.  Plaintiffs' complaint fails to allege any facts that could support a claim against Defendant under Section 1 of the Sherman Act or under the antitrust and unfair competition laws of 10 states.

*First*, vertical restraints generally are not a risk to competition, and, as the Court concluded in dismissing Plaintiffs' *per se* claim, the challenged agreements here are vertical in nature, not

---

[1] Sherman Act Section 1 claims are brought by nationwide classes of YouTube TV (Count 1) and DirecTV Stream (Count 2) subscribers. State-law claims are brought by YouTube TV subscribers in Arizona (Count 3), California (Count 4), Florida (Count 5), Michigan (Count 6), New York (Count 7), North Carolina (Count 8) and Tennessee (Count 9). State-law claims are brought by DirecTV Stream subscribers in California (Count 10), Florida (Count 11), Iowa (Count 13), Massachusetts (Count 14), Nevada (Count 15), New York (Count 16) and North Carolina (Count 17). A state-law claim was also brought by DirectTV Stream subscribers in Illinois (Count 12), but the Court dismissed that claim (ECF No. 85 at 32).

horizontal.  The challenged terms are in contracts pursuant to which ESPN (as a television network programmer) sells distribution rights to its ESPN network downstream to YouTube TV and DirecTV Stream (as television network program distributors), who then repackage those rights and resell them (with others) as a different product (SLPTV subscriptions) further downstream to consumers.  The relationship between ESPN and YouTube TV / DirecTV Stream is a producer/distributor relationship, which is vertical.

*Second*, Plaintiffs' rule of reason claims fail because they have not alleged a relevant antitrust product market or that Defendant has market power in any such market.  Because the allegedly anticompetitive conduct concerns contractual terms for programming rights, the relevant product market for any antitrust claim would be the market in which the negotiations for such rights occurs—that is, the upstream market in which TV programmers sell their products, linear network distribution rights, to distributors.  Plaintiffs ignore that market entirely and instead reference only the downstream market in which distributors bundle numerous linear networks to create a different product, SLPTV subscriptions, which they resell further downstream to consumers.  That approach exacerbates the misstep that proved fatal to the plaintiffs' claims in *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020).

Moreover, even if the market in which consumers purchase linear television programming services via SLPTV subscriptions were the relevant product market, Plaintiffs' alleged market definition, which is limited to vMVPDs, would still be facially implausible.  As Plaintiffs concede, linear television distributors include both vMVPD distributors and traditional cable and satellite distributors. (Am. Compl. ¶¶ 74, 82-88.)  Plaintiffs even allege that "most people with a vMVPD service switched directly from" MVPDs (*id.* ¶ 292), which is the hallmark of economic substitutes found within the same market, *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1121 (9th Cir. 2018).  Plaintiffs' own claims of switching establish substitutability and that they have implausibly excluded MVPDs from their proposed market definition.

*Third*, even ignoring Plaintiffs' faulty product market definition, Plaintiffs' rule of reason claims still fail because Plaintiffs have not plausibly alleged that the challenged restraint "actually injures competition" in that downstream market.  *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192,

1192 (9th Cir. 2012). Under *Brantley*, Plaintiffs must plausibly allege that the Base Term and MFN Clauses "raise[ ] barriers to entry" (*id.* at 1201), but they have not pled that causal element. Plaintiffs point to purported infrastructure barriers to entry, but they do not allege that the Base Term or the MFN Clauses create or contribute to any such infrastructure challenges. Plaintiffs also say that a potential entrant must negotiate with Defendant to remain competitive because of the importance of ESPN but that is implausible in light of their theory that subscribers and SLPTV providers would prefer packages without ESPN and in light of the uncontestable fact that numerous SLPTV providers do not carry ESPN at all. Similarly, any assertion that the ESPN agreements somehow foreclose new entrants from competing in the SLPTV market are rendered implausible by Plaintiffs' own specific factual allegations that, since 2015, numerous competitors in fact have entered the market, including Sling TV, DirecTV Now, PlayStation Vue, Pluto TV, Xumo, fuboTV, YouTube TV and Hulu + Live TV.

*Fourth*, Plaintiffs have no claim for damages for their federal claims. As this Court already held, "[b]ecause Plaintiffs allege that they purchased the subscriptions at a higher price due to costs passed on from YouTube TV And DirecTV, they are indirect purchasers without standing to maintain a claim for damages under the Sherman Act." (Dkt. No. 85 at 28.)

Finally, Plaintiffs' surviving claims under the antitrust and unfair competition laws of 10 states are nonviable. For eight of the 10 states (Arizona, California, Iowa, Michigan, Nevada, New York, North Carolina and Tennessee), the state law antitrust claims fail for the same reason as the federal claim. For the other two states (Massachusetts and Florida), Plaintiffs attempt to bring claims under unfair trade practices statutes, but, because the only alleged unfair trade practice is the same antitrust violation that fails as a matter of law, these claims fail too.

### 3.   <u>Legal Issues</u>

**Plaintiffs' Position:**

The legal issues in dispute include:

- Whether Disney entered into a contract or conspiracy in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

- Whether Disney violated the antitrust or unfair competition laws of Arizona, California, Florida, Iowa, Massachusetts, Michigan, Nevada, New York, North Carolina, or Tennessee;

- Whether a class should be certified under Federal Rule of Civil Procedure 23;

- Whether the members of the classes are entitled to treble damages, attorneys' fees, costs, and other monetary relief under the antitrust laws;

- Whether Disney should be enjoined from entering into or enforcing the anticompetitive terms in its carriage agreements with SLPTV competitors; and

- Whether an injunction should be entered requiring segregation or divestiture by Disney of its Hulu subsidiary, or in the alternative, of its business assets relating to Hulu + Live TV.

**Defendant's Position:**

The Court has held that Plaintiffs have failed to allege a *per se* violation of federal or state law.  The Court also has held that, with respect to Plaintiffs' claim for relief under Section  1 of the Sherman Act, Plaintiffs are indirect purchasers who lack standing to pursue damages under *Illinois Brick*.

Numerous fact and legal issues remain, including but not limited to Plaintiffs' inability: (i) to satisfy Rule 23's requirements for class certification; (ii) to prove their alleged antitrust market; (iii) to prove market power based on Plaintiffs' market definition; (iv) to prove the contested agreements caused anticompetitive effects; (v) to prove the alleged anticompetitive conduct is even economically plausible; and (vi) to prove whether the alleged violation is a substantial or material cause of Plaintiffs' injury.

In addition, the Court has held that Plaintiffs failed to state a claim for relief under Illinois law.  As for Plaintiffs' claims under the antitrust or unfair competition laws of 10 other states, numerous fact and legal issues also remain, including but not limited to:  (i) the failure of Plaintiffs' claims for the same reasons as their federal analogues; (ii) Plaintiffs do not and cannot meet state

statutory requirements; and (iii) Plaintiffs' inability to prove injury in fact or damages under state law.

### 4.    Motions

***Prior Motions to Dismiss the Original Complaints.***   On January 31, 2023, Defendant filed motions to dismiss this action and the now-consolidated *Fendelander, et al. v. The Walt Disney Company*, No. 5:22-cv-07533-EJD.   On September 30, 2023, the Court issued orders granting in part and denying in part Defendant's motions to dismiss and setting a deadline of October 16, 2023, for the plaintiffs in each action to file an amended complaint, if any.

***Motions to Stay Discovery.***   On July 3, 2023, Defendant filed motions to stay discovery pending the motions to dismiss in this action and *Fendelander*.   On September 30, 2023, in light of its rulings on the motions to dismiss, the Court terminated the motions to stay as moot.

***Consolidation.***   On October 6, 2023, the parties in this action and *Fendelander* made a stipulated request to consolidate the actions under Fed. R. Civ. P. 42(a)(2).   On October 13, 2023, the Court ordered that this action (*Biddle*), *Fendelander*, "and any action arising out of the same or similar operative facts now pending or hereafter filed in, removed to, or transferred to this District shall be consolidated for pre-trial purposes," and that all papers shall be filed on the *Biddle* docket, Case No. 5:22-cv-07317. (ECF No. 53 at 4.)

***Amendment of Complaint.***   On October 16, 2023, the parties stipulated that Plaintiffs may file a proposed consolidated amended complaint.   On October 18, 2023, the Court so ordered, and that same day, Plaintiffs filed the Consolidated Amended Class Action Complaint ("Amended Complaint") (ECF No. 59).

***Motion for Class Certification.***   Plaintiffs anticipate filing a motion for class certification. Defendant expects to oppose any motion for class certification.

***Motion to Dismiss the Amended Complaint.***   On December 1, 2023, Defendant filed a motion to dismiss the Amended Complaint. (ECF No. 67.)   On June 25, 2024, the Court granted in part and denied in part Defendant's motion. (ECF No. 85.)   The Court granted the motion without leave to amend as to Plaintiffs' *per se* theory, for damages under the Sherman Act and as to Plaintiffs' claim under Illinois law (Count 12) while denying Defendant's motion as to:

- Plaintiffs' Sherman Act § 1 claims (Counts 1 and 2) for declaratory and injunctive relief under a rule of reason theory; and

- Plaintiffs' remaining state-law claims (Counts 3-11 and 13-17).

(ECF No. 85 at 32.)

*Motion for Summary Judgment*.   Defendant anticipates filing a motion for summary judgment.

**5.     Amendment of Pleadings**

**Plaintiffs' Position:**

Plaintiffs propose that the deadline to join additional parties or amend the pleadings be set for 90 days from the initial case management conference—May 15, 2024. Plaintiffs do not intend to add any additional parties or amend the pleadings at this time but reserve their right to seek leave to amend in the future on any available basis.

**Defendant's Position:**

After Plaintiffs had filed two rounds of complaints, the Court's June 25, 2024 Order granted in part Defendant's motion to dismiss without leave to amend further.   Accordingly, no future amendments are warranted.

**6.     Evidence Preservation**

The parties certify that they have reviewed this Court's Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), are aware of their obligations, and have taken reasonable steps to preserve potentially relevant evidence.  The parties confirm that they have met and conferred concerning these obligations.

**7.     Disclosures**

**Plaintiffs' Position:**

Plaintiffs timely served their Fed. R. Civ. P. 26(a)(1) initial disclosures on March 2, 2023. Plaintiffs served their first amended Fed. R. Civ. P 26(a)(1) initial disclosures on November 22, 2023.

**Defendant's Position:**

Defendant timely served its Fed. R. Civ. P. 26(a)(1) initial disclosures on February 29, 2024.

1

**8.**      <u>**Discovery**</u>

2

***Discovery Requests.***

3

**Plaintiffs' Position:**

4

This case was filed on November 18, 2022. (ECF No. 1.) On June 28, 2023, Plaintiffs in

5

this action and the now-consolidated *Fendelander* action served on Disney substantially identical

6

requests for production and a single interrogatory. On July 3, 2023, Disney moved to stay

7

discovery. (ECF No. 43.) On September 30, 2023, after oral argument, the Court denied in part

8

Disney's motion to dismiss and denied Disney's motion to stay discovery as moot. (ECF No. 51.)

9

On October 18, 2023, Plaintiffs filed an amended complaint with additional Plaintiffs and state law

10

claims under the laws of Arizona, California, Florida, Illinois, Iowa, Massachusetts, Michigan,

11

Nevada, New York, North Carolina, and Tennessee. (ECF No. 59.) On December 1, 2023, Disney

12

again moved to dismiss (ECF No. 67), and on January 5, 2024, Plaintiffs opposed (ECF No. 69).

13

On February 2, 2024, 13 days before the hearing on Disney's second motion to dismiss—

14

and 125 days after the Court denied in part Disney's first motion (and denied Disney's motion to

15

stay discovery)—Disney made its first production in this matter, producing 37 documents

16

comprising 2,919 pages. In the six months since, Disney has produced 140 additional documents

17

comprising 1,768 pages, as follows:

18

    •    March 22, 2024: 5 documents comprising 10 pages

19

    •    March 29, 2024: 5 documents comprising 5 pages

20

    •    April 5, 2024: 118 documents comprising 1,679 pages

21

    •    April 24, 2024: 6 documents comprising 6 pages

22

    •    June 12, 2024: 6 documents comprising 68 pages

23

During this period, the Court denied Disney's second motion to dismiss, and a competitor challenge

24

by fuboTV to Disney's sports licensing practices in New York resulted in a preliminary injunction.

25

***Yet as of today, 651 days into this case—filed a year before fuboTV's and having survived two***

26

***motions to dismiss—Disney has produced only 177 documents, for a total of 4,687 pages.***

27

Document discovery has hit a standstill because Disney has rejected certain key document

28

custodians identified by Plaintiffs and will not engage on negotiating search terms (let alone

produce documents) until all custodians have been agreed on. On February 29, 2024, Disney identified five mid-level executives in its Rule 26 disclosures: Sean Breen (EVP, Sales, Platform Distribution); Justin Connolly (President, Platform Distribution); Reagan Feeney (SVP, Live Content Programming & Partnerships, Hulu); Justin Warbrooke (EVP Head of Corporate Development); and Jimmy Zasowski (SVP, Distribution Strategy, Platform Distribution). The parties met and conferred on March 11, 2024, to discuss custodians, and Disney proposed that producing documents and communications from these five custodians would meet its discovery obligations in this case. Plaintiffs disagreed and provided a counterproposal of 59 potential Disney custodians identified in Plaintiffs' own investigation of public sources and Disney's February 2, 2024 production of carriage agreements.

The parties met and conferred again on April 17, 2024, and Disney offered to add three additional custodians: Lauren Morrisey (SVP, Platform Distribution); Peter O'Connell (VP, Platform Distribution); and Sarah Flood (Senior Director, Platform Distribution). In a May 13 letter, Disney again took the position that its original proposed five custodians would be able to produce documents and communications that would be "more than sufficient for Plaintiffs to determine whether there is any factual basis for their claims." Disney rejected the remainder of Plaintiffs' requested custodians—including senior executives at Disney and ESPN who would have been expected to be involved in the business decisions at the heart of the carriage agreements at issue in this case, as well as many of the very individuals who signed the carriage agreements on behalf of Disney or Disney-controlled entities. Indeed, several of the custodians that Plaintiffs proposed— and Disney rejected—were custodians in Disney's prior production to the Department of Justice related to the Twenty-First Century Fox acquisition (for example, Disney Co-Chairman Alan Bergman) as well as custodians in Disney's production to fuboTV in related litigation currently pending in the Southern District of New York, discussed below (for example, ESPN Chairman James Pitaro).

On June 27, 2024—after reviewing submissions in the related *fuboTV* case (*see infra* § 10), which confirmed Plaintiffs' interest in several Disney custodians, including ESPN Chairman James Pitaro—Plaintiffs agreed to narrow their request of custodial sources to just 34. This decision was

based on Disney's representations during the meet-and-confer process and Plaintiffs' own investigation based on public sources. The parties met and conferred about the narrowed list on July 12. On July 24, Disney sent a letter agreeing to produce documents from seven other mid-level Disney executives but still declining to produce documents or communications from the senior executives that Plaintiffs requested. Despite Plaintiffs' now 14-month-old document requests, Disney has produced no discovery other than carriage agreements, documents reflecting reporting a handful of its employees' relationships, and Second Requests from the Department of Justice.

In addition to the seeming impasse on custodians—with Disney apparently refusing to even make an initial production of documents and communications from the 15 agreed-on custodians until all custodians are agreed on—the parties have been assessing a technology-assisted review procedure proposed by Disney on July 24.

On August 19, 2024, Disney served its First Request for Production of Documents. Disney seeks production of 27 categories of documents—including every invoice that each Plaintiff received for any subscription media or entertainment service that they subscribed to since 2015 (RFP No. 6), documents sufficient to show the terms of service for those subscriptions and any changes to those terms of service (RFP No. 5), and documents sufficient to show any programs, features, and content included in those subscriptions as well as any changes to those programs, features, and content (RFP No. 4).

On July 12, 2024, Plaintiffs served a subpoena on fuboTV seeking, among other things, documents and communications related to its carriage agreements with Disney. fuboTV served its responses and objections to the subpoena on July 22. Plaintiffs expect that document production from fuboTV will begin in the coming weeks.

**Defendant's Position:**

Plaintiffs' discovery complaints have not changed from prior case management statements, but neither has Plaintiffs' conduct.  Plaintiffs consistently have taken extreme positions and demanded extraordinary searches, but then have sat on their hands after Defendant responded with compromise proposals.  Until shortly before this statement was due to be submitted, that is where document discovery has stood:  on July 24, 2024 Defendant proposed a path forward involving

searches of 15 custodians with additional proposed compromise alternative approaches to deal with Plaintiffs' requests to add as custodians 8 in-house attorneys and 15 of Defendant's most senior executives.   In the same letter, Defendant proposed a Technology Assisted Review ("TAR") protocol to be applied to custodians' documents, to obviate the need for search term negotiations. After six weeks of silence, Plaintiffs waited until less than two days before this Joint Case Management Statement was to be submitted before responding to Defendant's letter with new positions.  Plaintiffs cannot drag their feet in discovery negotiations and then complain about the progress being made.

At the outset of the case, prior to this Court's Order terminating the first motion to dismiss, Defendant maintained that engaging in substantive discovery was untimely and unwarranted, and, on July 3, 2023, moved to stay all discovery and deadlines.  Defendant served its Responses and Objections to  Plaintiffs' requests for production and an interrogatory on July 28, 2023, while its Motion to Stay was pending, and consistent with the deadlines provided for in Federal Rules of Civil Procedure 33(b)(2) and 34(b)(2)(A).   In its responses, Defendant objected to providing discovery in light of the pending motions to dismiss and stay.  Thereafter, Defendant prepared supplemental and amended responses and objections to Plaintiffs' requests for production and an interrogatory.   Defendant served those responses on November 21, 2023.   Defendant fully responded to Plaintiffs' interrogatory on that date, including objecting to Plaintiffs' interrogatory on the basis that Plaintiffs' reference to "investigations" was undefined, vague and ambiguous.  The Parties submitted a proposed stipulated protective order and ESI protocol on January 23, 2024, which Magistrate Judge van Keulen granted as modified on January 25, 2024.

On March 11, 2024, the Parties met and conferred regarding Defendant's supplemental and amended responses and objections.  During this meet and confer, and for the first time, Plaintiffs provided clarification as to their intended meaning of "investigations".  Based on this clarification, Defendant reviewed, amended and supplemented its prior response.  Defendant served the second amended response on April 17, 2024.

Plaintiffs complain about the number of documents Defendant has produced to date, but ignore that Defendant's first document productions contained dozens of carriage agreements that

Plaintiffs argued were essential to production in this case. Plaintiffs also ignore that Plaintiffs' own refusal to move discovery negotiations forward have prevented the parties from reaching an agreement regarding the scope of custodial discovery. As they acknowledge, Plaintiffs originally sought *59* total custodians, most of whom have no connection to Plaintiffs' claims or whose documents are likely to be duplicative of other custodians. In response, Defendant offered eight custodians, which Defendant maintains is more than sufficient to conduct reasonable searches into appropriate issues over an appropriate time period, consistent with Defendant's previously articulated responses and objections. Nevertheless, Plaintiffs sought 17 additional custodians, beyond the eight Defendant had agreed to offer. The Parties met and conferred on July 8, and discussed Defendant's concern (among others) that nearly all of these remaining individuals fall into three categories: (1) Disney employees who, based on their roles, are unlikely to have relevant, nonduplicative documents. (2) in-house attorneys at Disney, whose documents contain substantial amounts of privileged material; and (3) senior executives at the highest levels of Disney who both are unlikely to have relevant, nonduplicative documents and whose inclusion as a custodian would be extraordinarily burdensome. The parties discussed potential compromise positions as to each of these categories, and agreed that, after further investigation, Defendant would follow up with a proposal.

On July 24, 2024, Defendant proposed a compromise with respect to all three categories identified above. Defendant (i) agreed to offer an additional seven custodians (so, in total, 15 custodians); (ii) suggested the Parties defer negotiations over attorneys who signed carriage agreements until Plaintiffs have reviewed the documents produced by the custodians already proposed by Defendant; and (iii) agreed to search the custodial files of uppermost executives from productions made to the DOJ in connection with the Disney Fox merger using a TAR protocol to be agreed upon by the Parties. Defendant has made a significant effort at compromise that Defendant expects should bring the parties closer to agreement. ***Plaintiffs did not respond for six weeks*** to these proposed compromises before doing so at the eleventh hour before submission of this Statement. In the meantime, Defendant has produced responsive material from centrally

1    located files, including carriage agreements with SLPTV providers, and on August 19, 2024,

2    Defendant served on Plaintiffs its First Set of Requests for Production.

3         Finally, Plaintiffs' comparisons to the speed of discovery in the *fuboTV* Action is inapposite

4    given that case has not yet proceeded to the merits stage for discovery on fuboTV's Section 1 claim,

5    and fuboTV's preliminary injunction motion—which alone received expedited treatment—

6    involved discovery *only* regarding fuboTV's Section 7 challenge on the joint venture, which is not

7    at issue here.[2]   Indeed, Plaintiffs' requests for cloned discovery from the *fuboTV* Action—which

8    differs in significant respects from this litigation—suggests that Plaintiffs' strategy has been to sit

9    back while the *fuboTV* Plaintiffs do discovery work, and then hope to draft in their wake.  Plaintiffs

10   cannot blame Defendant for the results of the path Plaintiffs have chosen.

11        ***ESI and Protective Orders.***

12        On January 25, 2024, Magistrate Judge van Keulen entered the Parties' stipulated

13   electronically stored information (ESI) and protective orders, as modified. (ECF Nos. 74, 75.)

14        ***Proposed Limitations or Modifications of the Discovery Rules.***

15        **Plaintiffs' Position:**

16        Plaintiffs propose a presumptive limit of 50 interrogatories per side. *See* Fed. R. Civ. P.

17   33(a)(1). Plaintiffs propose a presumptive limit of 50 depositions per side. *See* Fed. R. Civ. P.

18   30(a)(2).

19        **Defendant's Position:**

20        Defendant proposes a presumptive limit of 25 interrogatories per side, subject to increase

21   for good cause.  *See* Fed. R. Civ. P. 33(a)(1).  Defendant  proposes a presumptive limit of 25

22   depositions per side, subject to increase for good cause.  *See* Fed. R. Civ. P. 30(a)(2).  The parties

23   agreed that a presumptive limit of 25 depositions per side was appropriate in the Joint Case

24   Management Statement filed on March 2, 2023 (Dkt. No. 34), and Plaintiffs again proposed a 25-

25

26   ───────────────
[2] For the same reason, contrary to Plaintiffs' suggestion, certain custodians in the *fuboTV* Action
27   would not be appropriate custodians here.  ESPN's Chairman, James Pitaro, for example, was
     integral to discussions regarding the joint venture at issue in the *fuboTV* Action, but is unlikely to
28   have non-duplicative documents about Disney's licensing strategy and practices relating to
     Plaintiffs' claims.

1  deposition limit when they provided their proposed Joint Case Management Statement to Defendant

2  on November 14, 2023.  It was only after Defendant agreed to Plaintiffs' proposed limit that

3  Plaintiffs doubled their demand, to 50 depositions.  Defendant maintains that Plaintiffs' March 2

4  proposal was appropriate.

5      **9.**    **<u>Class Action</u>**

6      **Plaintiffs' Position:**

7         This case is a putative class action. Counsel for Plaintiffs have reviewed the Procedural

8  Guidance for Class Action Settlements.

9         Plaintiffs propose that one or more classes be certified pursuant to Federal Rule of Civil

10  Procedure 23(b)(2), (b)(3), and/or (c)(4). With respect to their claims under Section 1 of the

11  Sherman Act, Plaintiffs intend to seek certification of two nationwide classes:

12         **The Nationwide YouTube TV Subscriber Class:** All persons,

13         business associations, entities, and corporations who paid for a YouTube TV monthly subscription from the period beginning April 1, 2019, through the present (the "Class Period").

14         **The Nationwide DirecTV Stream Subscriber Class:** All persons,

15         business associations, entities, and corporations who paid for a monthly subscription for DirecTV Stream or its predecessors

16         DirecTV Now, AT&T Now, and/or AT&T TV Now, from the period beginning April 1, 2019, through the present (the "Class

17         Period").

18         With respect to their claims under state antitrust or unfair competition laws, Plaintiffs intend

19  to seek certification of state-specific classes of YouTube TV and/or DirecTV Stream monthly

20  subscribers from April 1, 2019, through the present for the following states: Arizona, California,

21  Florida, Iowa, Massachusetts, Michigan, Nevada, New York, North Carolina, and Tennessee.[3]

22         Plaintiffs propose to file a motion for class certification by July 24, 2026, as set forth in

23  Plaintiffs' proposed schedule. Plaintiffs propose consolidated class and merits expert discovery and

24  a single round of *Daubert* motions, whereas Disney proposes two rounds of expert disclosures and

25

26

_____

27  [3] The Amended Complaint also asserts a claim under Illinois law on behalf of a putative class of

28  DirecTV Stream subscribers, but the Court dismissed that claim (ECF No. 85 at 32).

*Daubert* motions. Given that class and merits issues frequently overlap, so-called class expert disclosures often address merits issues. Requiring two sets of reports, expert depositions, and *Daubert* motions that are likely to touch on overlapping issues prolongs the case schedule and increases the cost of the litigation with little corresponding benefit. Plaintiffs submit that their proposed approach—which many courts in complex class actions are now adopting[4]—is more efficient and will reduce briefing, expense, and delay. Disney is simply incorrect to assert that Plaintiffs' expert proposal is unworkable or unprecedented in this district. Indeed, Judge Chhabria recently adopted a schedule with a single round of expert disclosures in *Simon and Simon, PC v. Align Technology, Inc.*, an antitrust case. *See* No. 3:20-cv-03754-VC, ECF No. 106 at 2-3 (May 18, 2021). Plaintiffs proposed this expert approach a full nine months ago—in writing, to the Court. *See* ECF No. 66 at 15 (Nov. 27, 2023 case management statement). That Disney nonetheless accuses Plaintiffs of "mov[ing] the goalpost" is perplexing.

      **Defendant's Position:**

      Defendant intends to oppose certification of all putative classes proposed by Plaintiffs. That critical threshold issue must be addressed promptly, both because the Federal Rules require it and judicial economy and efficiency demand it.

---

[4] *See, e.g.*, *In re Deere & Co. Repair Servs. Antitrust Litig.*, No. 22-cv-50188 (N.D. Ill. Dec. 28, 2022), ECF No. 107 at 1 ("bifurcating class certification and merits expert discovery is a ***fool's errand***, only leading to inefficiencies and delay, which then snowballs into increased costs") (emphasis added) & ECF No. 109 (scheduling order); *Sky Federal Credit Union v. Fair Isaac Corp.*, No. 20-cv-2114 (Oct. 17, 2023 N.D. Ill.), ECF No. 180; *In re Automatic Card Shufflers Litig.*, No. 21-cv-1798 (N.D. Ill. May 30, 2023), ECF No. 97 at 1; *In re Google Digital Advertising Antitrust Litigation*, No. 21-md-3010 (Nov. 21, 2022 S.D.N.Y.), ECF No. 394 at 3; *In re Broiler Chicken Grower Antitrust Litig. (No. II)*, No. 21-cv-33 (E.D. Okla. Feb. 12, 2021), ECF No. 29 at 3; *In re Dental Supplies Antitrust Litig.*, No. 16-cv-696 (E.D.N.Y. July 14, 2016), ECF No. 94 at 1.

Under Federal Rule of Civil Procedure 23, class certification should be decided "[a]t an early practicable time after a person sues". *See* Fed. R. Civ. P. 23. Courts often resolve class certification prior to resolving merits-related issues, as this promotes efficiency, convenience and judicial economy. *See Kamar v. Radioshack*, 375 F. App'x 734, 736 (9th Cir. 2010) ("A district court neither must, nor should, decide the merits of a dispute — legal or factual — before it grants class certification"). That Plaintiffs rely almost entirely on a few out-of-circuit scheduling orders in other contexts shows they are out of step with practice in this Court, where class certification schedules routinely are set to have class certification expert disclosures prior to merits expert disclosures.[5] Defendant's proposed approach is common in this Court for a reason. Whether a

---

[5] *See, e.g.,* Case Management Order, *Rao v. Apple Inc.*, No. 5:18-cv-02813-EJD (N.D. Cal. Jan. 14, 2020) (Dkt. No. 177) (setting separate deadlines for designating "Class Certification Experts with Reports" followed, seven months later, by deadlines for designating "Merits Experts with Reports"); Case Management Order, *In re Restoration Robotics Sec. Litig.*, No. 5:18-cv-03712-EJD (N.D. Cal. Jan. 8, 2020) (Dkt. No. 86) (same, with approximately 11-month gap between class certification and merits expert disclosure deadlines); Case Management Order, *Galvez v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 5:14-cv-00110 EJD (HRL), at *1 (N.D. Cal. Apr. 20, 2015) (Dkt. No. 34 at 2) ("Defendant's request to bifurcate discovery into a class certification phase and a merits/post-certification phase is granted"); *Evans v. Linden Rsch., Inc.*, No. C 11-01078 DMR, 2012 WL 1438978, at *4 (N.D. Cal. Apr. 25, 2012) ("[D]iscovery has been bifurcated to avoid costly merits discovery at the class certification stage"); *Perez v. State Farm Mut. Auto. Ins. Co.*, No. C-06-01962 JW PSG, 2011 WL 1362086, at *1 (N.D. Cal. Apr. 11, 2011) ("Chief Judge Ware has bifurcated discovery"); *In re Apple and AT & TM Antitrust Litig.*, No. C07-05152 JW PVT, 2010 WL 1240295, at *2 (N.D. Cal. Mar. 26, 2010) ("[T]he court bifurcated class certification and merits discovery"); *Juarez v. Jani-King of Cal., Inc.*, No. 4:09-cv-03495-YGR (N.D. Cal. Nov. 19, 2010) (Dkt. No. 40) ("Discovery in this case should be bifurcated. The parties are to proceed with discovery as it relates to Plaintiff's Motion to Certify the Class"); *Miletak v. Allstate Ins. Co.*, No.

class is certified can have profound implications on if or how a case proceeds; if Plaintiffs' class certification motion fails, it would be inefficient and unfair to have subjected Defendant to months or years of burdensome and costly discovery in advance of that failing.  As a result, Defendant's proposed schedule has class certification issues sequenced earlier in the process, with Plaintiffs' class certification motion due March 2026.  Consistent with that deadline, expert discovery for purposes of class certification can and should be sequenced before the completion of expert discovery on the merits.

Plaintiffs instead ask to defer the issue for nearly two years and file their motion for class certification in July 2026, with simultaneous class certification and merits expert disclosures beginning in January 2026.  That is inconsistent with the Federal Rules and would undermine the efficiencies that would be gained because class certification is a critical threshold stage in the case. It also is inconsistent with Plaintiffs' prior proposed schedule, included in the March 2, 2023 Joint Case Management Statement, which sequenced class certification expert discovery and class certification before merits expert discovery—as it should be staged.  (*See* Dkt. No. 34 at 11-12.) Defendant agreed to the general sequence of the schedule Plaintiffs proposed originally, and maintains this still makes sense, yet Plaintiffs moved the goalpost in their last proposed scheduling submission (Dkt. No. 66 at 15), just as they have done with respect to the discovery parameters the parties previously agreed to for depositions.  Even now, Plaintiffs have not claimed anything has changed, and have not offered any explanation why they refuse to agree to the schedule they

---

C 06-03778 JW, 2008 WL 4291548, at *1 (N.D. Cal. Sept. 18, 2008) ("Class and merits discovery has been bifurcated"); Order Bifurcating Discovery Pending the Court's Ruling on Plaintiffs' Motion for Class Certification, *In re A TI Tech. HDCP Litig.*, No. C 06-01303 JW (N.D. Cal. Feb. 11, 2007) (Dkt. No. 25) ("The parties shall limit their discovery to class certification issues.  This limitation shall be in effect until the Court's ruling on Plaintiffs' Motion for Class Certification"); *Long v. Hewlett-Packard, Co.*, No. C06- 02816 JW HRL, 2006 WL 3751447, at *1 (N.D. Cal. Dec. 19, 2006) ("The District Court has bifurcated discovery").

themselves originally proposed.  Defendant respectfully submits that class certification must be addressed more promptly.

10.   **Related Cases**

**Plaintiffs' Position:**

On February 26, 2024, Plaintiffs provided the Court with notice pursuant to Civ. L.R. 3-13 of the pendency of *fuboTV Inc. et al. v. The Walt Disney Co. et al.*, No. 1:24-cv-01363-MMG (S.D.N.Y.), which involves some of the same subject matter as this litigation, as well as an overlapping party—Disney. (*See* ECF No. 82 (Notice of Pendency of Other Action).) The *fuboTV* complaint was filed February 20, 2024, in the Southern District of New York. The complaint, a redacted version of which is attached to Plaintiffs' Notice of Pendency (ECF No. 82-1), was brought by fuboTV, an SLPTV provider and Disney competitor. fuboTV's complaint asserts claims under Section 1 of the Sherman Act (15 U.S.C. § 8), Section 7 of the Clayton Act (15 U.S.C. § 18), and the Donnelly Act (N.Y. Gen. Bus. Law § 340) against the Walt Disney Company, Hulu LLC, ESPN, Inc., ESPN Enterprises, Inc., Fox Corporation, and Warner Bros. Discovery Inc., for unreasonable restraint of trade, *per se* unlawful tying, unlawful block-booking, and vertical restraints of trade in the SLPTV market and in the market for licensing of television channels featuring sports content (the "Sports Program Licensing Market"), as well as (for fuboTV's tying claims) the market for "Commercially Critical Sports Channels" (tying market) and "Non- Critical Television Channels) (tied market).

fuboTV seeks damages, divestiture by the defendants of their proposed joint venture (an SLPTV service that "will combine rights to most commercially critical sports content in a single entity"), and equitable relief to prohibit the anticompetitive conduct alleged in fuboTV's complaint. Among other things, fuboTV's complaint alleges that Disney's Base Term and MFN clauses raise barriers to entry in the SLPTV Market by "prevent[ing] new and nascent competitors from offering a differentiated service at better prices, lowering their ability and incentive to challenge the dominant incumbents YouTube TV and Hulu TV." *fuboTV* ECF No. 1 at ¶ 210; *see id.* at ¶¶ 10

(MFN clauses place new entrants at competitive disadvantage), 110 (ESPN terms raise barriers to entry), 119 (MFN clause raises barriers to entry).

On April 8, 2024, fuboTV filed a motion for a preliminary injunction seeking to temporarily enjoin the merger or, alternatively, to enjoin the merging parties from enforcing certain contractual restraints in their licensing agreements which, according to fuboTV, preclude the existence of any meaningful rival to the proposed new joint venture. (*fuboTV* ECF No. 94, 95.) On August 16, 2024, following a five-day hearing from August 6-12, Judge Garnett granted fuboTV's motion for a preliminary injunction, halting the joint venture between Disney, Fox Corporation, and Warner Brothers Discovery, Inc. (*fuboTV* ECF. No. 290.) The court found that "[e]ven on the preliminary record before the Court, it is apparent that competition and consumers may be harmed if the JV launches before its permissibility under the antitrust laws is conclusively determined" (*Id.* at 64.) Specifically, "the JV has at least the potential to fundamentally harm competition and consumers by allowing horizontal competitors to consolidate rather than compete, and to monopolize a segment of the market they created and now control as a result of their longstanding business practices; and by creating incentives for each JV Defendant to raise prices to distributors for their programming rather than fairly negotiate as parties who both have something to lose." (*Id.*) Thus, in view of the "multi-year monopolistic runway that [the defendants] have created for themselves will provide powerful incentives to thwart competition and hike prices on both consumers and other distributors," the court found that "Fubo and American consumers will face irreparable harm in the absence of an injunction." (*Id.* at 5.)

**Defendant's Position:**

On March 11, 2024, pursuant to Civil Local Rule 3-13(c), Defendant filed a response to Plaintiffs' Notice of Pendency of Other Action Pursuant concerning the *fuboTV* Action (Dkt. No. 83). As noted then, while there are similarities between this Action and *fuboTV Inc.* Action, there also important differences. Unlike Plaintiffs in this action, the *fuboTV* Action (i) asserts a claim under Section 7 of the Clayton Act (15 U.S.C. § 18) about the launch of a new proposed joint venture among Disney and others that is not at issue this litigation; (ii) does not assert state law claims under Arizona, California, Florida, Michigan, North Carolina, Tennessee, Illinois (now

1    dismissed), Iowa, Massachusetts or Nevada law; and (iii) names additional defendants—Fox

2    Corporation, Warner Bros. Discovery, Inc., Hulu, LLC, ESPN, Inc. and ESPN Enterprises, Inc.—

3    that are not named as defendants here.

4          The only proceedings that have occurred in the *fuboTV* Action to date have focused on

5    fuboTV's motion to preliminarily enjoin the joint venture that is not at issue in this case.  On August

6    16, 2024, the district court granted that motion, making clear that the decision concerns only the

7    Section 7 claim related to the joint venture, and expressly "declin[ing] to analyze [fuboTV's]

8    Section 1 claim".  No. 290 at 54.  Defendants in the *fuboTV* Action have filed a notice of appeal of

9    that order to the United States Court of Appeals for the Second Circuit, which has granted

10   Defendants' request for expedited briefing and consideration of the appeal.  *See The Walt Disney*

11   *Co. et al. v. fuboTV Inc. et al. v.*, Case: 24-2210, Dkt Nos. 1, 16.

12         However, one common feature between this litigation and the *fuboTV* Action—the

13   appropriate definition for the relevant antitrust market—shows why Plaintiffs' claims in this

14   litigation cannot succeed on the merits.  Defining a relevant market is a necessary step in the Rule

15   of Reason analysis, because "[w]ithout a definition of the market there is no way to measure the

16   defendant's ability to lessen or destroy competition."  *Ohio v. Am. Express Co.*, 138 S. Ct. 2274,

17   2285 (2018) (citation omitted).  In the *fuboTV* Action, the Plaintiff, Defendants and the Court all

18   recognized that the relevant market *must* include not only "SLPTV" services—that is, virtual

19   MVPDs.  Instead, the relevant market also necessarily includes traditional MVPDs, such as cable

20   and satellite TV.  "The only current market that serves all these consumers . . . includes traditional

21   MVPDs".  No. 290 at 39.  That relevant market is inconsistent with the only market that the

22   Plaintiffs here have alleged, for "Streaming Live Pay TV".  (Am. Compl. ¶¶ 253.)  Because

23   Plaintiffs have no claims based on any other market, and the *fuboTV* Action makes clear the market

24   Plaintiffs have proposed is untenable, Plaintiffs cannot prevail on any Rule of Reason claims, which

25   are the only type they have remaining.

26         **11.   <u>Relief</u>**

27         **Plaintiffs' Position:**

28

Plaintiffs seek damages to the maximum extent authorized by law, including treble damages. Plaintiffs also seek injunctive relief as well as attorneys' fees and costs.

**Defendant's Position:**

Defendant opposes any relief.

**12.      Settlement and ADR**

No settlement discussions have taken place.  In compliance with ADR L.R. 3-5, the parties discussed ADR at their February 15, 2023 meet-and-confer but agreed that it was premature to settle on an ADR process at this stage.  The parties are open to participating in private mediation at an appropriate time.  The parties will be prepared to discuss ADR at the initial case management conference.

**13.      Other References**

The parties do not believe this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**14.      Narrowing of Issues**

The parties will consider issues that can be narrowed by agreement or by motion, as well as potential means to expedite the presentation of evidence at trial.

**15.      Expedited Trial Schedule**

The parties do not consent to the Expedited Trial Procedure of General Order No. 64.

**16.      Scheduling**

**Plaintiffs' Position:**

Plaintiffs propose the following schedule:

| Event | Date |
|---|---|
| Initial Case Management Conference | September 12, 2024 |
| Deadline to amend pleadings/join other parties | December 11, 2024 |
| Deadline to file Joint Trial Setting Conference Statement | TBD – no later than 10 days before Trial Setting Conference[6] |

---

[6] *See* § IV.C.2 of Standing Order for Civil Cases.

| Event | Date |
|---|---|
| Trial Setting Conference | TBD – approx. 30 days before close of fact discovery[7] |
| Close of fact discovery | December 12, 2025 |
| Deadline for Plaintiffs' consolidated class certification and merits expert disclosures | January 23, 2026 |
| Deadline for Defendant's consolidated class certification and merits expert disclosures | March 6, 2026 |
| Deadline for Plaintiffs' consolidated class certification and merits reply expert disclosures | April 3, 2026 |
| Deadline for expert depositions | May 1, 2026 |
| Deadline to file *Daubert* motions | May 8, 2026 |
| Deadline to file oppositions to *Daubert* motions | June 5, 2026 |
| Deadline to file replies in support of *Daubert* motions | June 26, 2026 |
| Hearing on *Daubert* motions | TBD |
| Deadline to file motion for class certification | July 24, 2026 |
| Deadline for opposition to motion for class certification | August 21, 2026 |
| Deadline to file reply in support of motion for class certification | September 11, 2026 |
| Hearing on motion for class certification | TBD |
| Deadline for first ADR session | November 13, 2026 |
| Deadline to file dispositive motions | December 30, 2026[8] |
| Hearing on dispositive motions | TBD |
| Final Pretrial Conference | TBD |
| Jury Trial | TBD |

**Defendant's Position:**

Defendant proposes the following schedule, which adopts both the sequence of events proposed by Plaintiffs in the Parties' June 30, 2023 case management statement, *see* Dkt. No. 42 at

---

[7] *See* § IV.C.1 of Standing Order for Civil Cases.

[8] *See* § V.C of Standing Order for Civil Cases re briefing schedule for cross-motions.

16-17, and the overall time period proposed by Plaintiffs in this case management statement—*i.e.*, both Plaintiffs and Defendant suggest dispositive motions be due on May 22, 2026.

| Event | Date |
|-------|------|
| Initial Case Management Conference | September 12, 2024 |
| Deadline to amend pleadings/join other parties | N/A |
| Deadline for Plaintiffs' consolidated class certification expert disclosures | November 21, 2025 |
| Deadline for Defendant's consolidated class certification expert disclosures | January 23, 2026 |
| Deadline for Plaintiffs' consolidated class certification reply expert disclosures | February 27, 2026 |
| Deadline to file class certification and class *Daubert* motions | March 27, 2026 |
| Deadline to file oppositions to class certification and class *Daubert* motions | May 22, 2026 |
| Deadline to file replies in support of class certification and class *Daubert* motions | June 26, 2026 |
| Hearing on *Daubert* motions | TBD |
| Hearing on motion for class certification | TBD |
| Deadline to file Joint Trial Setting Conference Statement | TBD – no later than 10 days before Trial Setting Conference[9] |
| Trial Setting Conference | TBD – approx. 30 days before close of fact discovery[10] |
| Close of fact discovery | July 17, 2026 |
| Deadline for Plaintiffs' merits expert disclosures | August 7, 2026 |
| Deadline for Defendant's merits expert disclosures | September 25, 2026 |
| Completion of first ADR session | October 23, 2026 |
| Deadline for Plaintiffs' merits reply expert disclosures | November 30, 2026 |
| Deadline to file merits *Daubert* motions and dispositive motions | January 15, 2027 |
| Hearing on merits *Daubert* motions | TBD |
| Hearing on dispositive motions | TBD |

---

[9] *See* § IV.C.2 of Standing Order for Civil Cases.

[10] *See* § IV.C.1 of Standing Order for Civil Cases.

| Event | Date |
|---|---|
| Final Pretrial Conference | TBD |
| Trial | TBD |

**17.    Trial**

**Plaintiffs' Position:**

Plaintiffs request a jury trial and currently estimate the trial will take four weeks.

**Defendant's Position:**

Defendant believes certain of Plaintiffs' claims are not triable to a jury and respectfully suggests that it is premature to estimate the length of any potential trial at this early stage.

**18.    Disclosure of Non-Party Interested Entities or Persons**

Plaintiffs have filed their certification pursuant to Civil L.R. 3-15; other than the named parties, there are no non-party interested entities or persons to report.

Defendant has filed its certification pursuant to Civil L.R. 3-15, which discloses all non-party interested entities or persons.

**19.    Professional Conduct**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**20.    Other Matters**

**Plaintiffs' Position:**

Considering Disney's less-than-cooperative approach to discovery to date, Plaintiffs submit that regular check-ins with the Court or Magistrate Judge van Keulen would help ensure that the case remains on track. Accordingly, Plaintiffs request that the Court or Judge van Keulen hold case management conferences every six weeks.

**Defendant's Position:**

The recent "track" this case has been on has been guided by Plaintiffs' delays in responding to Defendant's proposals to move discovery forward.  For example, on May 13, Defendant sent Plaintiffs a letter setting forth proposals for potential document custodians; Plaintiffs did not

1  respond for six weeks, until June 27.  Then, after the parties had further conferrals, Defendant sent

2  Plaintiffs a further compromise proposal in a July 24 letter.  More than a month passed before

3  Plaintiffs responded on August 28, shortly before this submission was due.  When Plaintiffs

4  themselves have not been responding to discovery correspondence, and when the Parties do not yet

5  have disputes that merit intervention, it is premature and presumptuous of Plaintiffs to task the

6  Court or the Magistrate with scheduling unnecessary administrative conferences .

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: August 30, 2024

By:  ___/s/ Brian J. Dunne_____
      Brian J. Dunne

**BATHAEE DUNNE LLP**
Yavar Bathaee (CA 282388)
yavar@bathaeedunne.com
Andrew C. Wolinsky (CA 345965)
awolinsky@bathaeedunne.com
Priscilla Ghiță (*p.h.v. to be sought*)
phita@bathaeedunne.com
Allison Watson (CA 328596)
awatson@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
Tel.: (332) 322-8835

Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com
Edward M. Grauman (*pro hac vice*)
901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
Tel.: (213) 462-2772

**KOREIN TILLERY PC**
Christopher Burke (CA 214799)
cburke@koreintillery.com
Walter Noss (CA 277580)
wnoss@koreintillery.com
Kate Lv (CA 302704)
klv@koreintillery.com
707 Broadway, Suite 1410
San Diego, CA 92101
Tel: (619) 625-5620

Chad Bell (*pro hac vice*)
cbell@koreintillery.com
205 N. Michigan Avenue, Suite 1950
Chicago, IL 60601
Tel: (312) 641-9750

*Attorneys for Plaintiffs and the*
*Proposed Classes*

Respectfully submitted,

By:  _____/s/ J. Wesley Earnhardt_____
      J. Wesley Earnhardt

**CRAVATH, SWAINE & MOORE LLP**
Antony L. Ryan (*pro hac vice*)
aryan@cravath.com
J. Wesley Earnhardt (*pro hac vice*)
wearnhardt@cravath.com
David H. Korn (*pro hac vice*)
dkorn@cravath.com
825 Eighth Avenue
New York, NY 10019-7475
Tel.: (212) 474-1000

**FARELLA BRAUN + MARTEL LLP**
Douglas R. Young (CA 073248)
dyoung@fbm.com
Christopher C. Wheeler (CA 224872)
cwheeler@fbm.com
Daniel A. Contreras (CA 329632)
dcontreras@fbm.com
One Bush Street, 9th Floor
San Francisco, CA 94104-4415
Tel.: (415) 954-4400

*Attorneys for Defendant*
*The Walt Disney Company*

1

**<u>FILER ATTESTATION</u>**

2

     I am the ECF user who is filing this document. Pursuant to Civil L.R. 5-1(h)(3), I hereby

3

attest that each of the other signatories have concurred in the filing of the document.

4

5

Dated: August 30, 2024          By:      */s/ Christopher C. Wheeler*

6

                            Christopher C. Wheeler

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28