1  DANIEL M. PETROCELLI (S.B. #97802)
   dpetrocelli@omm.com
2  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars
3  8th Floor
   Los Angeles, California 90067-6035
4  Telephone:    +1 310 553 6700
   Facsimile:    +1 310 246 6779
5
   BRIAN P. QUINN (admitted *pro hac vice*)
6  bquinn@omm.com
   O'MELVENY & MYERS LLP
7  1625 Eye Street, NW
   Washington, DC 20006
8  Telephone:    +1 202 383 5300
   Facsimile:    +1 202 383 5414
9
   *Attorneys for Defendant*
10 *The Walt Disney Company*

11
12                      **UNITED STATES DISTRICT COURT**
13                      **NORTHERN DISTRICT OF CALIFORNIA**
14                                  **SAN JOSE**
15

| | |
|---|---|
| 16  Heather Biddle, et. al., individually and on behalf of all others similarly situated, | Consolidated Case No. 5:22-cv-07317-EJD-SVK |
| 17                    *Plaintiffs*, | **Declaration of Brian P. Quinn in Support of Plaintiffs' Administrative Motion to Consider Whether Another Party's Material Should be Sealed Under L.R. 79-5(f)** |
| 18   v. | |
| 19   The Walt Disney Company, | Judge: Hon. Edward J. Davila |
| 20                    *Defendant*. | |

21
22
23
24
25
26
27
28

I, Brian P. Quinn, declare and state as follows:

1. I am an attorney licensed to practice in Washington, D.C. and the Commonwealth of Virginia. I am admitted *pro hac vice* in this case. I am a counsel at O'Melveny & Myers LLP and counsel of record for The Walt Disney Company ("Disney") in the above-captioned litigation. I submit this declaration in support of Plaintiffs' Administrative Motion to Consider Whether Another Party's Material Should Be Sealed Under L.R. 79-5(f). ECF No. 145. I am familiar with Disney's treatment of confidential information based on my personal experience representing Disney.[1] I have personal knowledge of the following facts and, if called and sworn as a witness, I could and would testify to them.

2. Disney's sealing requests are narrowly tailored and necessary to protect Disney's confidential information contained in Plaintiffs' Second Consolidated Amended Complaint ("SCAC") and the accompanying redline, ECF Nos. 144-1, 144-2, as described in the following chart.

| Document | Portion of Document to Be Sealed | Designating Party | Reason for Redaction |
|---|---|---|---|
| ECF No. 144-1 | Page 80, lines 25-27 after "documents." | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-1 | Page 81, lines 1-4 | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-1 | Page 81, lines 7-22 | Disney | Confidential contract terms |
| ECF No. 144-1 | Page 82, lines 1-12 | Disney | Confidential contract terms |

---

[1] Courts in this District routinely grant motions to seal on the basis of declarations of counsel submitted pursuant to Local Rule 79-5. *See, e.g., In Re Meta Pixel Healthcare Litig.*, No. 3:2022-cv-03580, ECF Nos. 326, 340, 372 (N.D. Cal. Nov. 6, 2023); *Turner v. Apple Inc.*, No. 5:20-cv-07495, ECF Nos. 88, 95, 120 (N.D. Cal. Aug. 30, 2024). But if the Court deems this declaration insufficient, Disney respectfully requests that it be permitted to file a further declaration supporting filing under seal.

| | | | |
|---|---|---|---|
| ECF No. 144-1 | Page 82, lines 17-18 (¶ 379) | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-1 | Page 83, lines 1-26 | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-1 | Page 84, lines 1-24 | Disney | Confidential business negotiations and internal strategy and contract terms |
| ECF No. 144-1 | Page 85, lines 1-3 | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-1 | Page 85, lines 7-16 from "acknowledges that" to "This is what Disney" | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-1 | Page 85, lines 19-20 after "price floor." | Disney | Confidential business negotiations and internal strategy and contract terms |
| ECF No. 144-1 | Page 86, lines 1-26, through "Put simply" | Disney | Confidential business negotiations and internal strategy, financial information, and contract terms |
| ECF No. 144-1 | Page 87, line 13 (¶ 391) from "pseudonym" to "to" | Disney | Personal identifying information |
| ECF No. 144-1 | Page 87, line 15 (¶ 391) after "alias is" to the end of the line | Disney | Personal identifying information |
| ECF No. 144-1 | Page 87, lines 16-17 (¶ 392) from "pseudonym" to "to" | Disney | Personal identifying information |

| ECF No. 144-1 | Page 87, line 21 (¶ 394) from "secret" to "alias" | Disney | Personal identifying information |
|---|---|---|---|
| ECF No. 144-1 | Page 88, lines 1-17 through "As explained" | Disney | Confidential business negotiations and internal strategy and contract terms |
| ECF No. 144-1 | Page 88, line 22 from "secret" to "alias" | Disney | Personal identifying information |
| ECF No. 144-1 | Page 88, lines 24-26 (¶ 397) | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-1 | Page 89, lines 1-9 | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-1 | Page 89, lines 12-22 after "alias" | Disney | Confidential business negotiations and internal strategy and personal identifying information |
| ECF No. 144-1 | Page 89, line 23 from "writing as" to "set" | Disney | Personal identifying information |
| ECF No. 144-1 | Page 89, lines 24-25 from "responding" to "*id.*" | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-1 | Page 89, line 25 from "secret" to "alias" | Disney | Personal identifying information |
| ECF No. 144-1 | Page 89, lines 25-26 from "alias" to "Put simply" | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-1 | Page 89, line 27 from "secret" to "alias" | Disney | Personal identifying information |
| ECF No. 144-1 | Page 90, lines 4-10 after "negotiations" | Disney | Confidential business negotiations and internal strategy |

| ECF No. 144-1 | Page 90, line 12 from "pseudonyms—" to "respectively" | Disney | Personal identifying information |
| --- | --- | --- | --- |
| ECF No. 144-1 | Page 90, lines 14-17 after "Disney's CEO" | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-1 | Page 91, lines 1-17 | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-1 | Page 91, line 18 from "secret" to "alias" | Disney | Personal identifying information |
| ECF No. 144-1 | Page 92, lines 1-8 | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-1 | Page 92, lines 20-25 after "backchanneling" | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-1 | Page 93, lines 1-24 | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-1 | Page 95, lines 10-25 | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-1 | Page 96, lines 1-6 | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-1 | Page 97, lines 26-27 (¶ 425) after "2021" | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-1 | Page 98, lines 1-20 through "Disney was clear" | Disney | Confidential business negotiations and internal strategy |

| ECF No. 144-2[2] | Page 80, lines 25-27 after "documents." | Disney | Confidential business negotiations and internal strategy |
| --- | --- | --- | --- |
| ECF No. 144-2 | Page 81, lines 1-4 | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-2 | Page 81, lines 7-22 | Disney | Confidential contract terms |
| ECF No. 144-2 | Page 82, lines 1-12 | Disney | Confidential contract terms |
| ECF No. 144-2 | Page 82, lines 17-18 (¶ 379) | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-2 | Page 83, lines 1-27 | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-2 | Page 84, lines 1-24 | Disney | Confidential business negotiations and internal strategy and contract terms |
| ECF No. 144-2 | Page 85, lines 1-3 | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-2 | Page 85, lines 7-16 from "acknowledges that" to "This is what Disney" | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-2 | Page 85, lines 19-20 after "price floor." | Disney | Confidential business negotiations and internal strategy and contract terms |
| ECF No. 144-2 | Page 86, lines 1-26, through "Put simply" | Disney | Confidential business |

---

[2] ECF No. 144-2 is a redlined version of the SCAC. Disney seeks to seal the same portions of the SCAC in ECF No. 144-1 and ECF No. 144-2.

| | | | | |
|---|---|---|---|---|
| | | | | negotiations and internal strategy, financial information, and contract terms |
| | ECF No. 144-2 | Page 87, line 13 (¶ 391) from "pseudonym" to "to" | Disney | Personal identifying information |
| | ECF No. 144-2 | Page 87, line 15 (¶ 391) after "alias is" to the end of the line | Disney | Personal identifying information |
| | ECF No. 144-2 | Page 87, lines 16-17 (¶ 392) from "pseudonym" to "to" | Disney | Personal identifying information |
| | ECF No. 144-2 | Page 87, line 21 (¶ 394) from "secret" to "alias" | Disney | Personal identifying information |
| | ECF No. 144-2 | Page 88, lines 1-17 through "As explained" | Disney | Confidential business negotiations and internal strategy and contract terms |
| | ECF No. 144-2 | Page 88, line 22 from "secret" to "alias" | Disney | Personal identifying information |
| | ECF No. 144-2 | Page 88, lines 24-26 (¶ 397) | Disney | Confidential business negotiations and internal strategy |
| | ECF No. 144-2 | Page 89, lines 1-9 | Disney | Confidential business negotiations and internal strategy |
| | ECF No. 144-2 | Page 89, lines 12-22 after "alias" | Disney | Confidential business negotiations and internal strategy and personal identifying information |
| | ECF No. 144-2 | Page 89, line 23 from "writing as" to "set" | Disney | Personal identifying information |

| | | | |
|---|---|---|---|
| ECF No. 144-2 | Page 89, lines 24-25 from "responding" to "*id.*" | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-2 | Page 89, line 25 from "secret" to "alias" | Disney | Personal identifying information |
| ECF No. 144-2 | Page 89, lines 25-26 from "alias" to "Put simply" | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-2 | Page 90, line 1 from "secret" to "alias" | Disney | Personal identifying information |
| ECF No. 144-2 | Page 90, lines 5-11 after "negotiations" | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-2 | Page 90, line 13 from "pseudonyms—" to "respectively" | Disney | Personal identifying information |
| ECF No. 144-2 | Page 90, lines 15-18 after "CEO" | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-2 | Page 91, lines 1-17 | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-2 | Page 91, line 18 from "secret" to "alias" | Disney | Personal identifying information |
| ECF No. 144-2 | Page 92, lines 1-8 | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-2 | Page 92, lines 20-25 after "backchanneling" | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-2 | Page 93, lines 1-24 | Disney | Confidential business negotiations and internal strategy |

| | | | |
|---|---|---|---|
| ECF No. 144-2 | Page 95, lines 10-25 | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-2 | Page 96, lines 1-6 | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-2 | Page 97, lines 26-27 (¶ 425) after "2021" | Disney | Confidential business negotiations and internal strategy |
| ECF No. 144-2 | Page 98, lines 1-20 through "Disney was clear" | Disney | Confidential business negotiations and internal strategy |

3. There are compelling reasons to seal the foregoing portions of the SCAC and the accompanying redline that are "sufficient to outweigh the public's interest in disclosure." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). Courts regularly find that there are compelling reasons to seal when documents may otherwise "become a vehicle for improper purposes" if they become public. *Nixon*, 435 U.S. at 598. For example, courts seal documents or portions of documents when they may be used "as [a] source[] of business information that might harm a litigant's competitive standing," *id.*, or when documents include personal identifying information, *see Capitol Specialty Ins. Corp. v. GEICO Gen. Ins. Co.,* 2021 WL 7708484, at *3 (C.D. Cal. Apr. 14, 2021).

4. The identified portions of the SCAC contain highly confidential and commercially sensitive business information, including information regarding sensitive contract terms, negotiations with third-parties, Disney's internal business decisions and strategy, and financial records and economic forecasts about Disney's businesses.

5. Courts regularly find that litigants may file under seal details about contract negotiations and contracts with third parties that contain proprietary and confidential business

1  information. *See Baker v. SeaWorld Entm't, Inc.*, 2017 WL 5029612, at *6 (S.D. Cal. Nov. 3, 2017)
2  (finding compelling reasons to seal "negotiations with third parties"); *DiscoverOrg Data, LLC v.*
3  *Bitnine Glob., Inc.*, 2020 WL 8669859, at *3 (N.D. Cal. Nov. 6, 2020) ("[T]he competitive harm
4  that would result from the disclosure of Plaintiff's pricing and contracts with third parties is a
5  compelling reason that outweighs the general history of access and the public policies favoring
6  disclosure."). And courts "routinely find that non-public financial, pricing, and strategy
7  information could harm litigants' competition standing and grant motions to seal such
8  information." *Monster Energy Co. v. Vital Pharms., Inc.*, 2019 WL 3099711, at *2 (C.D. Cal. June
9  17, 2019) (citing cases from the Northern District of California).

10  6.  If the identified information contained in the SCAC were publicly disseminated,
11  Disney would suffer competitive harm, including in its future negotiations and dealings with third
12  parties. Disclosure of its confidential information would pose a significant risk of competitive
13  harm to Disney. *See Jones v. PGA Tour, Inc.*, 2023 WL 2167400, at *3 (N.D. Cal. Feb. 21, 2023)
14  (granting motion to seal negotiation information finding "that disclosure of this material would
15  plausibly cause [plaintiff] competitive harm by hampering its ability to negotiate future
16  contracts"); *McCurley v. Royal Seas Cruises, Inc.*, 2018 WL 3629945, at *2 (S.D. Cal. July 31,
17  2018) (compelling reasons to seal contract between defendant and a third party); *In re Elec. Arts,*
18  *Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (finding "clear error" when a trial court did not seal
19  "confidential and commercially sensitive information"); *Exeltis USA Inc. v. First Databank, Inc.*,
20  2020 WL 2838812, at *2 (N.D. Cal. June 1, 2020) (granting motion to seal "confidential and
21  proprietary business, sales, or licensing information, including . . . financial performance and
22  company strategy").

23  7.  Finally, certain of Disney's senior executives use email aliases for safety and
24  cybersecurity reasons. The protection of the specific email aliases they use or used is essential to
25  safeguard their personal safety and privacy, and to ensure the uninterrupted operation of the

company's business. Disney is one of the most well-recognized companies in the world,[3] and given the high-profile nature of the executives' positions, public disclosure of these aliases would result in an overwhelming volume of unsolicited and harassing email communication. Those types of communications contributed to the need for the email aliases in the first instance. Exposure would also threaten to disrupt the executives' ability to perform critical corporate functions efficiently. Sealing these aliases is a necessary measure to prevent abuse; to protect Disney's executives' safety and prevent cybersecurity attacks that aim to mimic those executives' email aliases; and to preserve the privacy of the company's current and former leadership. *See Nixon*, 435 U.S. at 598 (compelling reasons exist for sealing information which could be used for improper purposes); *Nightingale v. U.S. Citizenship & Immigr. Servs.*, 507 F. Supp. 3d 1193, 1213 (N.D. Cal. 2020) (granting motion to seal employees' personal identifying information). There is also little to no countervailing public interest in the disclosure of these executives' specific email aliases.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 6th day of June, 2025 in Washington, D.C.

Dated: June 6, 2025                                     Respectfully submitted,

By:    */s/ Brian P. Quinn*
       Brian P. Quinn

*Attorney for Defendant*
*The Walt Disney Company*

---

[3] *See* Marty Swant, *The World's Most Valuable Brand Names,* Forbes (2020), available at https://www.forbes.com/the-worlds-most-valuable-brands/#678e3bc1119c (Disney ranking as the 7th most valuable brand name in the world).

**ATTESTATION OF CONCURRENCE IN FILING**

I, Daniel M. Petrocelli, hereby attest in accordance with Civil Local Rule 5-l(i)(3) that the signatory listed above, on whose behalf this filing is submitted, concurs in this filing's content and has authorized the e-filing of this document.

Dated: June 6, 2025                                        Respectfully submitted,

                                                By:   */s/ Daniel M. Petrocelli*
                                                      Daniel M. Petrocelli

                                                *Attorney for Defendant*
                                                *The Walt Disney Company*