**BATHAEE DUNNE LLP**
Yavar Bathaee (CA 282388)
yavar@bathaeedunne.com
Andrew C. Wolinsky (CA 345965)
awolinsky@bathaeedunne.com
Priscilla Ghita (*pro hac vice*)
pghita@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
Tel.: (332) 322-8835

Allison Watson (CA 328596)
awatson@bathaeedunne.com
3420 Bristol Street, Suite 600
Costa Mesa, CA 92626
Tel.: (213) 462-2772

Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com
Edward M. Grauman (*pro hac vice*)
egrauman@bathaeedunne.com
Kaki J. Johnson (*pro hac vice*)
kjohnson@bathaeedunne.com
Bryce Talbot (*pro hac vice*)
btalbot@bathaeedunne.com
901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
Tel.: (213) 462-2772

*Interim Lead Counsel for the YouTube TV
and DirecTV Stream Classes*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HEATHER BIDDLE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE WALT DISNEY COMPANY,<br><br>Defendant. | Case No. 5:22-cv-07317-EJD<br><br>**YOUTUBE TV AND DIRECTV STREAM PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hon. Edward J. Davila<br><br>Hearing Date: March 19, 2026<br>Time: 9:00 a.m. |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on March 19, 2026, at 9:00 a.m., before the Honorable Edward J. Davila of the United States District Court for the Northern District of California, located in Courtroom 4, Robert F. Peckham Federal Building & United States Courthouse, 280 South 1st Street, San Jose, CA 95113, Plaintiffs Heather Biddle, Jeffrey Kaplan, Joel Wilson, Laura Molina, Dev Singh, Nicholas Dowd, Angel Hernandez, David Kenward, Utica Cason, David Show, Dustin Shapiro, Tamika Anderson, Connie Harrison,  and Don Knoch (the "YouTube TV Plaintiffs") and Plaintiffs Michelle Fendelander, Rhonda Lee Haines, Michael Hughes, John Manso, Jasmine, McCormick, Angela Heard, Steven Tucker, Scott Thompson, Douglas Yarema, and William Gaskins (the "DirecTV Stream Plaintiffs," and collectively with the YouTube TV Plaintiffs, the "Settling Plaintiffs"), on behalf of themselves and all others similarly situated, will and now do move the Court for an order granting the Settling Plaintiffs' Motion for Preliminary Approval of Class Action Settlement pursuant to Federal Rule of Civil Procedure 23.

Settling Plaintiffs propose that the Settlement Classes be defined as follows:

**YouTube TV Settlement Class**

> All persons who purchased a YouTube TV subscription from the period beginning April 1, 2019, through the date of preliminary approval of the settlement by U.S. District Court for the Northern District of California.

**DirecTV Stream Settlement Class**

> All persons who purchased a DirecTV streaming live pay TV subscription (branded at various times as, at least, DirecTV Stream, DirecTV Now, and AT&T TV Now) from the period beginning April 1, 2019, through the date of preliminary approval of the settlement by U.S. District Court for the Northern District of California.

Excluded from the Settlement Classes are Disney, its employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliates; counsel for the Parties and their employees; and the judicial officers and immediate family members and associated Court staff assigned to this case.

1    Settling Plaintiffs seek entry of an order (1) preliminarily certifying the proposed classes
2    for settlement purposes, (2) provisionally appointing Settling Plaintiffs as class representatives,
3    (3) appointing Bathaee Dunne LLP as interim lead counsel for the Settlement Classes, (4)
4    preliminarily approving the Settlement, (5) preliminarily approving the proposed distribution
5    plan, (6) approving the proposed notice plan and directing notice to the Settlement Classes, (7)
6    appointing Epiq Class Action & Claims Solutions, Inc., as the settlement administrator, and (8)
7    setting a fairness hearing for final approval of the Settlement (including service awards) and
8    distribution plan and to consider the motion for an award of attorney's fees and costs.

9    This motion is based upon this notice of motion, the accompanying memorandum of points
10   and authorities, all filed supporting declarations and exhibits, the records from this action, and
11   any argument that may be presented at or before the hearing on this motion.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

BACKGROUND ....................................................................................................2

I.      THE LITIGATION ......................................................................................2

II.     THE PROPOSED SETTLEMENT ...............................................................4

        A.      The Settlement Classes ....................................................................4

        B.      The Release ......................................................................................5

        C.      The Settlement Relief .......................................................................6

        D.      Other Cases ......................................................................................6

III.    THE PROPOSED DISTRIBUTION PLAN ..................................................6

ARGUMENT ........................................................................................................8

I.      THE PROPOSED CLASSES SHOULD BE PRELIMINARILY CERTIFIED .....8

        A.      The Rule 23(a) Requirements Are Met ..............................................8

                1.      Numerosity ...........................................................................8

                2.      Commonality .........................................................................9

                3.      Typicality .............................................................................9

                4.      Adequacy of Representation .................................................10

        B.      The Rule 23(b)(3) Requirements Are Met .......................................10

                1.      The Predominance Requirement Is Met ................................11

                2.      The Superiority Requirement Is Met .....................................11

II.     THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ...........12

        A.      Settling Plaintiffs and Counsel Have Adequately Represented the Class ...........12

        B.      The Settlement Was Negotiated at Arm's Length ............................14

        C.      The Relief Provided for the Class Is Adequate ...............................14

                1.      Value of relief .....................................................................15

                2.      The costs, risks, and delay of trial and appeal .....................16

                3.      Proposed method of distributing relief to the class ..............18

                4.      Proposed award of attorney's fees .......................................19

                5.      Agreements required to be identified under Rule 23(e)(3) .....20

        D.      The Settlement Treats Class Members Equitably Relative to Each Other ...........20

III.    THE DISTRIBUTION PLAN SHOULD BE PRELIMINARILY APPROVED .....22

IV.     THE CLASS NOTICE PLAN SHOULD BE APPROVED ...........................23

V.      THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING AND
        RELATED DATES ...................................................................................24

CONCLUSION.................................................................................................................................25

APPENDIX – Chart of Comparable Settlements

# TABLE OF AUTHORITIES

## Cases

*Abadilla v. Precigen, Inc.*,
  2023 WL 7305053 (N.D. Cal. Nov. 6, 2023) ................................................. 12, 16

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (2017) ........................................................................................... 11

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
  9 F.4th 1102 (9th Cir. 2021) ............................................................................. 17

*Biddle v. Walt Disney Co.* (*Biddle I*),
  696 F. Supp. 3d 865 (N.D. Cal. 2023) ................................................................ 2

*Biddle v. Walt Disney Co.* (*Biddle II*),
  2024 WL 3171860 (N.D. Cal. June 25, 2024) ......................................... 3, 6, 17

*Briseño v. Henderson*,
  998 F.3d 1014 (9th Cir. 2021) ..................................................................... 19, 20

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ........................................................................... 22

*Cottle v. Plaid Inc.*,
  340 F.R.D. 356 (N.D. Cal. 2021) ...................................................................... 12

*DZ Reserve v. Meta Platforms, Inc.*,
  96 F.4th 1223 (9th Cir. 2024) .............................................................................. 9

*Edwards v. Andrews*,
  846 F. App'x 538 (9th Cir. 2021) ...................................................................... 22

*Edwards v. Nat'l Milk Producers Fed'n*,
  2017 WL 3623734 (N.D. Cal. June 26, 2017) ............................................ 15, 22

*Fendelander v. Walt Disney Co.*,
  2023 WL 6464134 (N.D. Cal. Sept. 29, 2023) .................................................... 2

*Fitzhenry-Russell v. Coca-Cola Co.*,
  2019 WL 11557486 (N.D. Cal. Oct. 3, 2019) .................................................... 18

*FuboTV Inc. v. The Walt Disney Co.*,
  No. 1:24-cv-01363 (MMG) ................................................................................. 3

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ........................................................................... 16

# TABLE OF AUTHORITIES
## Cases
*(continued)*

*Ill. Brick Co. v. Illinois*,
  431 U.S. 720 (1977) ............................................................................ 6

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011)) ...................................................... 14, 19

*In re Cal. Pizza Kitchen Data Breach Litig.*,
  129 F.4th 667 (9th Cir. 2025) .................................................. 12, 14, 18

*In re Coll. Athlete NIL Litig.*,
  2023 WL 8372787 (N.D. Cal. Nov. 3, 2023) ................................... 9, 11

*In re Coll. Athlete NIL Litig.*,
  803 F. Supp. 3d 959 (N.D. Cal. 2025) ................................................ 18

*In re Facebook Internet Tracking Litig.*,
  2022 WL 16902426 (N.D. Cal. Nov. 10, 2022) ................................... 18

*In re Facebook, Inc. Internet Tracking Litig.*,
  2024 WL 700985 (9th Cir. Feb. 21, 2024) ......................................... 19

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) (en banc) ............................... 8, 10, 19, 20

*In re LinkedIn ERISA Litig.*,
  2023 WL 8631678 (N.D. Cal. Dec. 13, 2023) ................................ 20, 22

*In re Linkedin User Priv. Litig.*,
  309 F.R.D. 573 (N.D. Cal. 2015) ...................................................... 22

*In re Lithium Ion Batteries Antitrust Litig.*,
  2020 WL 7264559 (N.D. Cal. Dec. 10, 2020) ...................... 11, 18, 21, 22

*In re Lithium Ion Batteries Antitrust Litig.*,
  2022 WL 16959377 (9th Cir. Nov. 16, 2022) ................................... 6, 11

*In re Lithium Ion Batteries Antitrust Litig.*,
  853 F. App'x 56 (9th Cir. 2021) ......................................................... 21

*In re Lithium Ion Batteries Antitrust Litig.*,
  No. 13-md-02420 (N.D. Cal.) ............................................................ 15

# TABLE OF AUTHORITIES

## Cases

(*continued*)

*In re MacBook Keyboard Litig.*,
  2023 WL 3688452 (N.D. Cal. May 25, 2023) ........................................................ 19

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ............................................................................ 13

*In re N.J. Tax Sales Certificates Antitrust Litig.*,
  750 F. App'x 73 (3d Cir. 2018) ........................................................................ 17

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) .............................................................. 10, 15, 23

*In re Optical Disk Drive Prods. Antitrust Litig.*,
  785 F. App'x 406 (9th Cir. 2019) .................................................................... 17

*In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*,
  2023 WL 8437034 (E.D. Pa. Dec. 4, 2023) ...................................................... 21

*In re Telescopes Antitrust Litig.*,
  2025 WL 1093248 (N.D. Cal. Apr. 11, 2025) .......................................... *passim*

*Johnson v. City of Grants Pass*,
  72 F.4th 868 (9th Cir. 2023) ............................................................................... 8

*Lou v. Am. Honda Motor Co., Inc.*,
  2025 WL 1359067 (N.D. Cal. May 9, 2025) .................................................... 15

*Moreno v. S.F. Bay Area Rapid Transit Dist.*,
  2019 WL 343472 (N.D. Cal. Jan. 28, 2019) .................................................... 13

*Noll v. eBay, Inc.*,
  309 F.R.D. 593 (N.D. Cal. 2015) ...................................................................... 13

*Ohio v. Am. Express Co.*,
  585 U.S. 529 (2018) ............................................................................................ 9

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) (en banc) .................................................. 8, 9, 11

*Perks v. Activehours, Inc.*,
  2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) .................................................. 21

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ........................................................ 14, 17, 18, 21

# TABLE OF AUTHORITIES
## Cases
(*continued*)

*Shuman v. SquareTrade Inc.*,
    2023 WL 2311950 (N.D. Cal. Mar. 1, 2023) ......................................................... 19

*Unger v. The Walt Disney Co.*,
    No. 1:25-cv-00375 (S.D.N.Y.) ................................................................................. 3

*Uschold v. NSMG Shared Servs., LLC*,
    333 F.R.D. 157 (N.D. Cal. 2019) ........................................................................... 12

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ............................................................................... 11

## Statutes and Rules

28 U.S.C. § 1715 ........................................................................................................... 23

28 U.S.C. § 1715(b) ...................................................................................................... 23

FED. R. CIV. P. 23 ................................................................................................... *passim*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

After three years of vigorous litigation, including two motions to dismiss and hundreds of thousands of pages of discovery, the YouTube TV Plaintiffs and DirecTV Stream Plaintiffs in this consolidated case reached a proposed class settlement with Defendant The Walt Disney Company. The Settlement, achieved through arm's-length negotiations facilitated by a former federal district judge, offers meaningful monetary and behavioral relief to the Settling Plaintiffs and to the proposed Settlement Classes—all persons who purchased a subscription to streaming live pay television ("SLPTV") services from YouTube (the "YouTube TV Settlement Class") or DirecTV (the "DirecTV Stream Settlement Class") from April 1, 2019, through the date of preliminary approval. Under the Settlement, Disney will provide a $50 million non-reversionary fund to compensate class members for alleged overcharges for YouTube TV and DirecTV Stream SLPTV subscriptions during the class period, and has agreed to injunctive relief designed to redress the alleged harm to competition in the SLPTV market.

The Settlement and proposed distribution plan readily satisfy the standard for preliminary approval—namely, that at the final-approval stage, the Court will likely find the Settlement and distribution plan fair, reasonable, and adequate under Rule 23(e)(2) and will likely certify the Settlement Classes. *See* FED. R. CIV. P. 23(e)(1)(B). Settling Plaintiffs therefore respectfully request that the Court enter an order (1) preliminarily certifying the proposed classes for settlement purposes, (2) provisionally appointing Settling Plaintiffs as class representatives, (3) appointing Bathaee Dunne LLP as interim lead counsel for the Settlement Classes, (4) preliminarily approving the Settlement, (5) preliminarily approving the proposed distribution plan, (6) approving the proposed notice plan and directing notice to the Settlement Classes, (7) appointing Epiq Class Action & Claims Solutions, Inc., as settlement administrator, and (8) setting a fairness hearing for final approval of the Settlement (including service awards) and distribution plan and to consider the motion for an award of attorney's fees and costs.

# BACKGROUND

## I.    THE LITIGATION

Settling Plaintiffs allege that Disney entered into anticompetitive agreements with SLPTV providers, including YouTube and DirecTV, with the purpose and effect of increasing prices for SLPTV plans in the United States. *See generally* Dkt. 59 (Consol. Am. Class Action Compl. ("ACAC")). Both companies are Disney's rivals in the alleged SLPTV market, where Disney sells its own product called Hulu + Live TV through its Hulu subsidiary. Settling Plaintiffs allege Disney negotiated carriage agreements with its horizontal competitors that contained express provisions requiring ESPN to be included in the SLPTV provider's lowest-priced package, while also providing each counterparty with a most-favored-nation clause to assure Disney that any price increases caused by ESPN rates would not be undercut by other SLPTV providers. Settling Plaintiffs assert claims on behalf of putative classes of YouTube TV and DirecTV Stream subscribers under Sherman Act § 1 and various state antitrust and consumer protection laws.

This litigation began in November 2022, with separate actions brought on behalf of YouTube TV (*Biddle*) and DirecTV Stream (*Fendelander*) subscribers. *See* Dkt. 1 (*Biddle*); No. 5:22-cv-07533-EJD, Dkt. 1 (*Fendelander*). The initial complaints were the products of several months of extensive factual investigation and economic analysis by Settling Plaintiffs' counsel, Bathaee Dunne. Bathaee Decl. ¶ 9. In those complaints, certain Settling Plaintiffs brought Sherman Act § 1 claims for damages and injunctive relief, alleging they were direct purchasers of supracompetitively priced SLPTV subscriptions from Disney counterparties Google (for YouTube TV) and DirecTV (for DirecTV Stream). Dkt. 1 ¶ 8; Dkt. 1 ¶ 8 (*Fendelander*). In September 2023, the Court granted in part and denied in part Disney's motions to dismiss, holding that these Settling Plaintiffs were indirect purchasers and thus could not seek damages under federal antitrust law. *Biddle v. Walt Disney Co.* (*Biddle I*), 696 F. Supp. 3d 865, 886 (N.D. Cal. 2023); *Fendelander v. Walt Disney Co.*, 2023 WL 6464134, at *14 (N.D. Cal. Sept. 29, 2023).

On October 13, 2023, the Court consolidated the actions for pretrial purposes on the *Biddle* docket. Dkt. 53. On October 18, 2023, Settling Plaintiffs filed the operative Consolidated Amended Class Action Complaint ("ACAC"). Dkt. 59. In the ACAC, Settling Plaintiffs again

2

alleged they were direct purchasers entitled to seek damages under federal law and alleged in the alternative that they were indirect purchasers who could sue for damages under various state laws. *See, e.g.*, *id.* ¶¶ 10, 438, 460, 464, 476. On June 25, 2024, the Court granted in part and denied in part Disney's motion to dismiss the ACAC, holding once more that Settling Plaintiffs were indirect purchasers, dismissing their Sherman Act § 1 damages claim, and sustaining their state-law damages claims (other than under Illinois law). *Biddle v. Walt Disney Co.* (*Biddle II*), 2024 WL 3171860, at *13-17 (N.D. Cal. June 25, 2024).

Since the commencement of the case, the parties have engaged in substantial discovery practice. Bathaee Decl. ¶ 10. Disney produced and Settling Plaintiffs' counsel reviewed the SLPTV carriage agreements at the heart of this case. *Id.* ¶ 13. The parties negotiated search parameters, custodians, and a technology-assisted review protocol. *Id.* ¶ 11; Dkt. 112. The parties have litigated disputes as to Settling Plaintiffs' first set of document requests before Magistrate Judge van Keulen. *See* Dkts. 108, 109. Settling Plaintiffs also subpoenaed SLPTV provider FuboTV Inc. ("Fubo") to obtain documents produced and testimony given in Fubo's lawsuit against Disney in the Southern District of New York asserting competitor claims under the Sherman and Clayton Acts, *FuboTV Inc. v. The Walt Disney Co.*, No. 1:24-cv-01363 (MMG). Bathaee Decl. ¶ 12. In all, Settling Plaintiffs received and reviewed 212,093 pages of documents. *Id.* ¶ 13. Prior to the parties' settlement negotiations, Settling Plaintiffs were engaged in discovery as to class definition and Rule 23 requirements ahead of an anticipated motion for class certification. *Id.* ¶ 10.

While this and other discovery was pending, a single plaintiff filed suit on January 14, 2025, in the Southern District of New York on behalf of a putative class of Fubo subscribers. *Unger v. The Walt Disney Co.*, No. 1:25-cv-00375 (S.D.N.Y.), Dkt. 1. Many of the allegations in the *Unger* complaint (later amended) appear to have been taken directly from the allegations in the ACAC in this case. On January 30, 2025, Disney and the *Unger* plaintiffs stipulated to transfer the *Unger* action to this Court. *Unger* (S.D.N.Y.) Dkt. 19. The transferred case was docketed as Case No. 5:22-cv-07317 and was related to this action on February 24, 2025, Dkt. 132.

On April 15, 2025, Settling Plaintiffs agreed with Disney to mediate this matter before the Hon. Layn Phillips (Ret.). Bathaee Decl. ¶ 14. On May 30, 2025, Settling Plaintiffs requested leave to file a Second Consolidated Amended Class Action Complaint ("SCAC") that added class claims on behalf of Fubo subscribers and a claim under Section 7 of the Clayton Act to block Disney's recently announced acquisition of Fubo. Dkts. 144, 145-3 (sealed SCAC). On June 4, 2025, counsel for Settling Plaintiffs and Disney participated in an in-person mediation session, Phillips Decl. ¶ 5, and on June 6 they notified the Court that they had reached a settlement in principle to settle all claims on behalf of YouTube TV, DirecTV Stream, and Fubo subscribers, Dkt. 147. Because *Unger* plaintiffs' counsel also purported to represent Fubo subscribers, on June 9, 2025, Settling Plaintiffs' counsel moved for an order under Rule 23(g)(3) designating Mr. Bathaee of Bathaee Dunne interim lead counsel for the putative YouTube TV, DirecTV Stream, and Fubo classes. Dkt. 149. On June 10, 2025, the Court consolidated *Unger* and *Biddle* on the *Biddle* docket. Dkt. 154. And on July 21, 2025, the Court appointed Settling Plaintiffs' counsel (Bathaee Dunne) as interim lead counsel for the YouTube TV and DirecTV Stream classes and appointed the *Unger* plaintiffs' counsel to represent the Fubo class. Dkt. 174.

On October 3, 2025, Settling Plaintiffs' counsel, *Unger* plaintiffs' counsel, and Disney participated in an in-person mediation session with Judge Phillips. Dkt. 194. Settling Plaintiffs and Disney were able to reach a settlement in principle on terms consistent with the previous settlement in principle, with an approximate proportionate reduction to account for the exclusion of the putative Fubo subscriber class. *Id.* at 1. Since then, the parties have worked diligently to draft and negotiate the Settlement Agreement, notices, and other settlement exhibits, and to select the proposed settlement administrator through a competitive bidding process. Bathaee Decl. ¶ 16. On March 4, 2026, the parties executed the Settlement Agreement.

## II.    THE PROPOSED SETTLEMENT

### A.    The Settlement Classes

The Settlement Agreement ("SA") grants a release on behalf of classes of YouTube TV and DirecTV SLPTV subscribers, defined as follows:

4

**YouTube TV Settlement Class**

> All persons who purchased a YouTube TV subscription from the period beginning April 1, 2019, through the date of preliminary approval of the settlement by U.S. District Court for the Northern District of California.

**DirecTV Stream Settlement Class**

> All persons who purchased a DirecTV streaming live pay TV subscription (branded at various times as, at least, DirecTV Stream, DirecTV Now, and AT&T TV Now) from the period beginning April 1, 2019, through the date of preliminary approval of the settlement by U.S. District Court for the Northern District of California.

*See* SA ¶ 1(gg). Identified counsel-, Disney-, and Court-related entities are excluded. *Id.*

The Settlement Classes are nearly identical to the Nationwide YouTube TV and DirecTV Stream Subscriber Classes in the ACAC. *See* ACAC ¶¶ 372-75. The only substantive differences are the inclusion of an affirmative end date to the class period (preliminary approval); no state-specific subclasses (because the Settlement applies nationwide); and that the DirecTV Stream class now reflects that DirecTV's SLPTV service bore a succession of names during the class period.

### B.    The Release

The Settlement Agreement releases all antitrust, unjust enrichment, unfair competition, unfair practices, trade practices, price discrimination, unitary pricing, racketeering, and consumer protection claims the Settlement Classes asserted or could have asserted against Disney in the operative ACAC, as well as similar claims the Settlement Classes had, now have, or may have that share an identical factual predicate. *See* SA ¶ 1(x). Also released are claims related to the transaction announced January 6, 2025, by which Disney would become the majority owner of Fubo, *id.*—the subject of the Clayton Act Section 7 claim in the proposed SCAC that Settling Plaintiffs requested leave to file before entering into the Settlement. *See* Dkts. 144, 145-3 (sealed SCAC). The Settlement Agreement does not release claims involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, securities, or similar claims relating to SLPTV. SA ¶ 1(x).

### C.    The Settlement Relief

The total settlement amount to be paid by Disney is $50 million—with no reversion of any undistributed funds to Disney. SA ¶¶ 1(ee), 15, 27. Any attorney's fees and costs awarded by the Court to Settling Plaintiffs' counsel are to be paid from the settlement fund. *Id.* ¶ 30. Disney also agrees to pay (from the settlement fund) service awards of up to $5,000 per Settling Plaintiff, as awarded by the Court. *Id.* ¶¶ 1(aa), 23(e). The Settlement Agreement also includes injunctive relief designed to redress the harm to competition that Settling Plaintiffs allege arises from Disney's anticompetitive carriage agreements with SLPTV competitors. First, Disney will, during carriage agreement negotiations, consider proposals from SLPTV providers to allow the providers to offer their subscribers a monthly paid subscription service that offers less than all Disney networks alongside legacy services, *id.* ¶ 16—*i.e.*, packages that could exclude Disney's costly ESPN channels. Second, Disney will maintain information walls to prevent the sharing of confidential information between its negotiation teams for its linear networks (*e.g.*, ESPN) and its SLPTV providers (*e.g.*, Hulu + Live TV). *Id.* This injunctive relief will last for a term of three years following final approval. *Id.*

### D.    Other Cases

No other cases will be affected by the Settlement.

## III.    THE PROPOSED DISTRIBUTION PLAN

The Settlement Agreement does not specify a distribution plan. Instead, it authorizes Settling Plaintiffs' counsel to propose such a plan, subject to approval by the Court separately from its consideration of the fairness of the Settlement itself. SA ¶¶ 26, 28. The one requirement imposed by the Settlement Agreement with respect to distribution is that the settlement funds be allocated between class members in *Illinois Brick* repealer states and non-repealer states.[1] *Id.* ¶ 24.

---

[1] *See Ill. Brick Co. v. Illinois*, 431 U.S. 720, 735 (1977); *In re Lithium Ion Batteries Antitrust Litig.*, 2022 WL 16959377, at *1 n.1 (9th Cir. Nov. 16, 2022) (repealer states are those that "have authorized indirect purchasers of goods to bring state antitrust claims," whereas non-repealer

Settling Plaintiffs propose that 90% of the Net Settlement Fund[2] be allocated to Settlement Class members in repealer states and 10% be allocated to those in non-repealer states to account for the differing strength of their claims. Distribution Plan ("DP") ¶ 9 (Bathaee Ex. 2). Within each of these pools, funds will be distributed *pro rata* to class members who submit claims, based on the combined duration of each claimant's subscription(s) to YouTube TV and DirecTV Stream. *Id.* ¶ 12. Thus, claimants who are members of both Settlement Classes will receive compensation with respect to each service to which they subscribed. *Id.* Settlement Class members will be able to file a claim form online or by mail and will be given the option of receiving digital payment or a traditional paper check. Azari Decl. ¶ 42. The form will allow claimants to report whether they resided in a repealer state during the class period and how long they subscribed to YouTube TV or DirecTV Stream. DP ¶ 10.

The amounts to be paid to claimants will be calculated once the number submitting valid claims has been determined, with the goal of complete exhaustion of funds. DP ¶ 13. To minimize administrative expense, fixed amounts will be calculated in one-year tiers corresponding to the combined subscription time. *Id.* Should a balance remain after the initial distribution, Settling Plaintiffs' counsel will seek to redistribute such funds *pro rata* to claimants, if economically feasible. *Id.* ¶ 14. If not economically feasible, Settling Plaintiffs' counsel will propose, subject to Court approval, that those funds be donated to an appropriate *cy pres* recipient or escheated to relevant government authorities. *Id.* There will be no reversion of unused funds to Disney. *Id.*

---

states "restrict such claims"). The relevant repealer states are listed in the Distribution Plan (Bathaee Ex. 2) at 3 n.1. Illinois is excluded in accordance with the Court's holding that the Illinois Antitrust Act bars indirect purchaser class actions, including in federal court. *See Biddle II*, 2024 WL 3171860, at *15-16.

[2] *I.e.*, the $50 million settlement amount plus interest, less payment of notice and claims administration, taxes, attorney's fees, litigation costs, and service awards. SA ¶¶ 1(q), 1(t), 23.

1

**ARGUMENT**

2      A class action "may be settled, voluntarily dismissed, or compromised only with the

3 court's approval." FED. R. CIV. P. 23(e). Where the parties have reached a proposed settlement,

4 Rule 23(e)(1)(B) requires a court to "direct notice in a reasonable manner to all class members

5 who would be bound by the proposal if giving notice is justified by the parties' showing that the

6 court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class

7 for purposes of judgment on the proposal." FED. R. CIV. P. 23(e)(1)(B). In reviewing a proposed

8 settlement, a court should be mindful of the "strong judicial policy that favors settlements,

9 particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ.*

10 *Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc) (citation omitted).

11      The Settlement Classes meet the requirements for certification as damages classes under

12 Rule 23(b)(3), and the Settlement itself—which provides substantial monetary relief and an

13 injunction that addresses the business practices alleged to be anticompetitive in this case—is "fair,

14 reasonable, and adequate" under Rule 23(e)(2). The Court should grant preliminary approval.

15 **I.    THE PROPOSED CLASSES SHOULD BE PRELIMINARILY CERTIFIED**

16      To certify a settlement class, a plaintiff must establish that Rule 23(a) and at least one of

17 the bases for certification under Rule 23(b) are met. *See Olean Wholesale Grocery Coop., Inc. v.*

18 *Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (en banc); *Hyundai*, 926 F.3d at 556.

19 Settling Plaintiffs here seek to certify two settlement classes under Rule 23(b)(3). As shown

20 below, the requirements of Rule 23(a) and 23(b)(3) are satisfied such that the Court "will likely

21 be able to certify the class" at the final-approval stage, FED. R. CIV. P. 23(e)(1)(B).

22      **A.    The Rule 23(a) Requirements Are Met**

23      The Rule 23(a) factors are: numerosity, commonality, typicality, and adequacy of

24 representation. *Olean*, 31 F.4th at 663. Each is met here.

25           **1.    Numerosity**

26      Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is

27 impracticable." Here, each Settlement Class has millions of members. *See* Bathaee Ex. 4 at 10;

28 Ex. 5 at 19. The Settlement Classes thus satisfy the numerosity requirement. *See Johnson v. City*

8

1    *of Grants Pass*, 72 F.4th 868, 886 (9th Cir. 2023) ("classes of more than sixty are sufficiently
2    large" for numerosity), *rev'd on other grounds*, 603 U.S. 520 (2024).

3    ### 2.    Commonality

4    Rule 23(a)(2) requires "questions of law or fact common to the class." "To prove there is
5    a common question of law or fact that relates to a central issue in an antitrust class action, plaintiffs
6    must establish that essential elements of the cause of action, such as the existence of an antitrust
7    violation or antitrust impact, are capable of being established through a common body of
8    evidence, applicable to the whole class." *Olean*, 31 F.4th at 666 (cleaned up). Settling Plaintiffs
9    have alleged that Disney entered into anticompetitive agreements with SLPTV providers with the
10   purpose and effect of increasing prices for SLPTV plans in the U.S. Here, common questions of
11   law and fact pertaining to the existence of an antitrust violation include (1) whether the challenged
12   agreements have a substantial anticompetitive effect in the relevant market that harms consumers
13   in that market; (2) whether Disney can show a procompetitive rationale for the agreements; and
14   (3) whether any procompetitive efficiencies could be reasonably achieved through less
15   anticompetitive means. *See In re Coll. Athlete NIL Litig.*, 2023 WL 8372787, at *5-6 (N.D. Cal.
16   Nov. 3, 2023); *In re Telescopes Antitrust Litig.*, 2025 WL 1093248, at *3 (N.D. Cal. Apr. 11,
17   2025) (Davila, J.) (finding commonality where defendants allegedly entered into anticompetitive
18   agreements concerning telescope pricing); *see also Ohio v. Am. Express Co.*, 585 U.S. 529, 541-
19   42 (2018) (three-step rule of reason framework for § 1 claims). Commonality is satisfied.

20   ### 3.    Typicality

21   Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical
22   of the claims or defenses of the class." "Under the rule's permissive standards, representative
23   claims are 'typical' if they are reasonably co-extensive with those of absent class members; they
24   need not be substantially identical." *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1238 (9th
25   Cir. 2024) (citation omitted). Settling Plaintiffs' claims and those of the other Settlement Class
26   members all arise from the same course of conduct (Disney's anticompetitive agreements with
27   SLPTV providers) and allege the same injury (supracompetitive prices and decreased consumer
28   choice). *See, e.g.*, *Telescopes*, 2025 WL 1093248, at *3 (finding typicality where class

representatives "purchased consumer telescopes and paid supracompetitive prices caused by Defendants' alleged conspiracy"). Typicality is satisfied.

### 4.    Adequacy of Representation

Rule 23(a)(4) requires that representative parties "fairly and adequately protect the interests of the class," and asks: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hyundai*, 926 F.3d at 566 (citation omitted).

Settling Plaintiffs are well suited to represent the Settlement Classes. All have taken an active role in this case, including by participating in discovery, searching for and providing records to counsel, staying in close contact with counsel, and reviewing the terms of the Settlement. *See* Settling Pls.' Decls. There are no conflicts of interest between Settling Plaintiffs and the Settlement Classes. As current and former YouTube TV and DirecTV Stream subscribers, Settling Plaintiffs have the same interest as other class members in establishing Disney's liability and will benefit from the proposed relief in the same way. And while the named Settling Plaintiffs intend to apply for service awards of up to $5,000, "[i]ncentive payments to class representatives do not, by themselves, create an impermissible conflict between class members and their representatives." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015).

Further, Settling Plaintiffs' counsel are well qualified to represent the Settlement Classes. In appointing Bathaee Dunne interim lead counsel for the YouTube TV and DirecTV Stream classes, the Court found that the firm has "been instrumental in identifying and investigating the claims in this action," "demonstrated its willingness to commit resources on behalf of these two classes," and "more than demonstrated its ability to handle complex class actions and its deep knowledge in the field of antitrust law." Dkt. 174 at 4; *see also* Bathaee Decl. ¶¶ 27-33 & Ex. 3. Counsel submit they have continued to demonstrate their fitness to serve as lead counsel by securing the robust settlement relief here.

### B.    The Rule 23(b)(3) Requirements Are Met

Settling Plaintiffs seek certification of damages classes under Rule 23(b)(3), which applies when "the court finds that the questions of law or fact common to class members predominate

10

over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Unlike with respect to a litigation class, manageability at trial "is not a concern in certifying a settlement class where, by definition, there will be no trial." *Hyundai*, 926 F.3d at 556-57. As explained below, the Settlement Classes satisfy the Rule 23(a) and Rule 23(b)(3) factors, and the Court "will likely be able to certify the class" at the final-approval stage, FED. R. CIV. P. 23(e)(1)(B).

### 1. The Predominance Requirement Is Met

Predominance looks at "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Olean*, 31 F.4th at 664. Predominance is "readily met" in antitrust cases, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997), and the existence of a Section 1 violation "naturally lends itself to common proof, because that determination turns on defendants' conduct and intent along with the effect on the market, not on individual class members," *In re Coll. Athlete NIL Litig.*, 2023 WL 8372787, at *8 (cleaned up).

The same is true here. Settling Plaintiffs' claims turn on whether Disney entered into anticompetitive agreements with SLPTV providers and whether those agreements caused an artificial increase in SLPTV market prices. The proof Settling Plaintiffs would offer at trial would focus on Disney's conduct and the effect of that conduct on the SLPTV market. This is sufficient for predominance. *See Telescopes*, 2025 WL 1093248, at *3 (finding predominance where "every Settlement Class Member has been subjected to the same alleged conduct which caused the same type of harm"); *In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559, at *9-10 (N.D. Cal. Dec. 10, 2020), *aff'd*, 2022 WL 16959377 (9th Cir. Nov. 16, 2022). Nor is predominance defeated by the presence of both *Illinois Brick* repealer and non-repealer state residents within the Settlement Classes. *See Lithium Ion*, 2020 WL 7264559, at *10-11.

### 2. The Superiority Requirement Is Met

The superiority requirement is meant "to assure that the class action is the most efficient and effective means of resolving the controversy. Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class

11

1    certification." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010)

2    (cleaned up); *see, e.g.*, *Telescopes*, 2025 WL 1093248, at *3. This requirement is met here, as

3    each Settlement Class comprises millions of consumers with relatively small damages.

4    **II.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED**

5        To be approved, a proposed settlement must be "fair, reasonable, and adequate" under

6    Rule 23(e)(2) factors. "At the preliminary approval stage, the settlement need only be potentially

7    fair. Preliminary approval is thus appropriate if the proposed settlement appears to be the product

8    of serious, informed, noncollusive negotiations, has no obvious deficiencies, does not improperly

9    grant preferential treatment to class representatives or segments of the class, and falls within the

10   range of possible approval." *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 169 (N.D.

11   Cal. 2019) (cleaned up). Before the amendment of Rule 23(e)(2) in 2018, the Ninth Circuit had

12   set forth a non-exhaustive list of factors a court may consider (the "*Hanlon*" factors) to determine

13   the appropriateness of a proposed settlement.[3] *In re Cal. Pizza Kitchen Data Breach Litig.*, 129

14   F.4th 667, 674 (9th Cir. 2025). "The key *Hanlon* factors are now baked into the text of Rule 23(e),

15   and the remaining ones can still be considered for the Rule 23(e)(2) analysis." *Id.* The Settlement

16   meets the Rule 23(e)(2) requirements and should be preliminarily approved.

17       **A.    Settling Plaintiffs and Counsel Have Adequately Represented the Class**

18       Rule 23(e)(2)(A) asks whether "the class representatives and class counsel have

19   adequately represented the class." "This consideration overlaps with certain *Hanlon* factors, such

20   as the extent of discovery completed and the stage of the proceedings, the experience and view of

---

[3] The *Hanlon* factors, also known as the "*Churchill*" or "*Staton*" factors, are: "(1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Cal. Pizza Kitchen*, 129 F.4th at 674.

counsel, and the reaction of the class members of the proposed settlement." *Abadilla v. Precigen, Inc.*, 2023 WL 7305053, at *8 (N.D. Cal. Nov. 6, 2023).[4]

Settling Plaintiffs and their counsel have vigorously represented the interests of the Settlement Classes for more than three years in this hard-fought litigation. Counsel's work began with an extensive presuit investigation, as is evident from the detailed, highly technical, 82-page *Biddle* and *Fendelander* original complaints. *See* Dkt. 1; *Fendelander* Dkt. 1. Settling Plaintiffs then litigated (and survived) two rounds of motions to dismiss, giving them "an opportunity to evaluate the strength and weaknesses of the relative claims and defenses." *Moreno v. S.F. Bay Area Rapid Transit Dist.*, 2019 WL 343472, at *5 (N.D. Cal. Jan. 28, 2019).

And while formal discovery is not required "where the parties have sufficient information to make an informed decision about settlement," *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted), here Settling Plaintiffs engaged in extensive discovery, obtaining from Disney and reviewing the carriage agreements at issue; negotiating search parameters, custodians, and a technology-assisted review protocol; and litigating several disputes as to Settling Plaintiffs' first set of document requests before Magistrate Judge van Keulen. Bathaee Decl. ¶¶ 10-11, 13; Dkts. 108, 109, 112. Settling Plaintiffs also subpoenaed Fubo, obtaining and reviewing tens of thousands of pages of documents and deposition testimony from Fubo's Clayton Act Section 7 case against Disney in the Southern District of New York. Bathaee Decl. ¶ 12. In total, Settling Plaintiffs received and reviewed over 212,000 pages of documents, including the highly confidential Disney carriage agreements at the heart of this case. *Id.* ¶ 13.

Settling Plaintiffs' counsel also engaged in two rounds of mediation with Disney, which included the exchange of detailed mediation briefs. Bathaee Decl. ¶¶ 15-16. As attested by the mediator, Judge Phillips: "The mediation process involved extensive analysis of the parties' positions, including the value of Settling Plaintiffs' claims regarding Disney's alleged anticompetitive behavior, the evidence supporting Settling Plaintiffs' antitrust claims, Disney's

---

[4] The reaction of class members is best assessed at the final approval hearing and "should not be considered in preliminary approval." *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 376 (N.D. Cal. 2021).

13

defenses to those claims, and my assessment of the likelihood of potential outcomes at various stages of the litigation, including class certification, summary judgment, trial, and on appeal." Phillips Decl. ¶ 6. This exercise, combined with the information learned through presuit investigation, motion practice, and discovery, informed Settling Plaintiffs' counsel's decision-making concerning settlement. *See, e.g.*, *Noll v. eBay, Inc.*, 309 F.R.D. 593, 607 (N.D. Cal. 2015) (Davila, J.). Counsel's assessment is also informed by their many years of experience litigating antitrust matters, class actions, and other complex litigation, including in leadership roles. *See* Bathaee Decl. ¶¶ 19, 27-34; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009).

Finally, as discussed above, Settling Plaintiffs have been actively involved in the litigation, providing documents and information necessary to respond to Disney's discovery requests, keeping abreast of case developments, regularly communicating with counsel, and reviewing the terms of the proposed settlement. *See supra* Argument, Part I.A.4 (re Rule 23(a)(4)).

Taken together, these efforts show that Settling Plaintiffs and their counsel have more than adequately represented the Settlement Classes. This factor supports preliminary approval.

### B.      The Settlement Was Negotiated at Arm's Length

The Settlement was negotiated at arm's length under the auspices of an experienced and respected mediator, Judge Phillips, satisfying Rule 23(e)(2)(B). Though the presence of a mediator is not dispositive, it is "a factor weighing in favor of a finding of non-collusiveness," *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011))—at least, where the mediation is "more than a pro forma exercise," *Cal. Pizza Kitchen*, 129 F.4th at 678 n.5. The mediation here was robust, involving detailed mediation briefs and two in-person mediation sessions. Phillips Decl. ¶¶ 4-5. Judge Phillips attests that "[t]he mediation was hard-fought" and "[t]he parties reached the proposed settlement terms based on an arm's-length, careful, and good-faith negotiation." *Id.* ¶¶ 8, 10; *see Rodriguez*, 563 F.3d at 961 (crediting mediator's attestation). This factor favors preliminary approval.

### C.      The Relief Provided for the Class Is Adequate

Rule 23(e)(2)(C) asks whether the proposed relief is adequate, taking into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of

distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Considering these factors, the relief here provides exceptional value to the Settlement Classes and meets the test of adequacy.

### 1.    Value of relief

"Although not articulated as a separate factor in Rule 23(e), the relief that the settlement is expected to provide to class members is a central concern." *Lou v. Am. Honda Motor Co., Inc.*, 2025 WL 1359067, at *5 (N.D. Cal. May 9, 2025) (cleaned up). Here, the Settlement provides substantial monetary relief—a $50 million non-reversionary fund, which on its own provides sufficient value to justify approval—as well as injunctive relief designed to redress the harm to competition alleged by Settling Plaintiffs. This represents an excellent result given the substantial risks and delay of ongoing litigation.

The $50 million settlement amount compares favorably with antitrust class settlements in this district and others. As seen in the chart in the Appendix, this amount is in line with other indirect purchaser plaintiff ("IPP") settlements involving multimillion-member classes, including cases involving overcharges for telescopes ($32 million, 4 million class members), lithium-ion batteries ($113.45 million, 10 million notices sent), milk ($52 million, 73 million class members), and pork ($75 million, 27.6 million notices sent).[5] The settlement amount also compares well with antitrust settlements more broadly. From 2009 to 2024, IPP settlements nationwide averaged $16.5 million and direct purchaser settlements averaged $44.3 million. UC Law SF, *2024 Antitrust Annual Report* 17 (July 2025), https://ssrn.com/abstract=5374409. During that same period, antitrust settlements in the media industry averaged $65.3 million. *Id.* at 16.

For comparison, the $50 million recovery here is nearly double the amount approved in *In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934 (9th Cir. 2015)—the closest comparable

---

[5] *See In re Telescopes Antitrust Litig.*, No. 20-cv-03639 (N.D. Cal.) (Davila, J.); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420 (N.D. Cal.); *Edwards v. Nat'l Milk Producers Fed'n*, No. 11-cv-04766 (N.D. Cal.); *In re Pork Antitrust Litig.*, No. 18-cv-1776 (D. Minn.).

case Settling Plaintiffs have found. That was an antitrust class action brought by Netflix DVD subscribers who alleged that Netflix and Walmart reached an anticompetitive agreement whereby Walmart would depart from the DVD rental business, allowing Netflix to charge its customers unfairly high monthly subscription prices. *Id.* at 940. A class of 35 million Netflix subscribers (significantly larger than the combined size of the Settlement Classes) reached a settlement with Walmart for $27,250,000 to compensate for the alleged overcharges. *Id.* at 940-41. The district court approved the settlement and the Ninth Circuit affirmed. *Id.* at 944-49.

And while the monetary recovery here is sufficient on its own to support approval, the Settlement also provides valuable injunctive relief designed to redress future harm to competition. For three years after final approval, Disney must, during carriage agreement negotiations, consider proposals from SLPTV providers to allow these providers to offer their subscribers packages that exclude ESPN or other Disney networks. *See* SA ¶ 16. The forced inclusion of ESPN in SLPTV providers' lowest-price "base" packages is one of the key mechanisms by which Settling Plaintiffs allege Disney imposed a price floor on the SLPTV market, thereby harming competition and resulting in overcharges to YouTube TV and DirecTV Stream subscribers. *See* Dkt. 59 (ACAC) ¶¶ 336-45. Disney will also be required to maintain information walls to prevent the sharing of confidential information between its negotiation teams for its linear networks (*e.g.*, ESPN) and its SLPTV providers (*e.g.*, Hulu + Live TV). SA ¶ 16. This redresses the risk of information sharing between Disney's programming entities and distribution entities raised throughout the ACAC and SCAC. *See, e.g.,* Dkt. 59 (ACAC) ¶¶ 346-52.

### 2.    The costs, risks, and delay of trial and appeal

Rule 23(e)(2)(C)(i) requires a court to consider "the costs, risks, and delay of trial and appeal." This includes looking at "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; and the risk of maintaining class action status throughout the trial." *Abadilla*, 2023 WL 7305053, at *10 (cleaned up) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). While Settling Plaintiffs are confident they would ultimately prevail, they are not blind to the substantial risk of proceeding with this

litigation, particularly when weighed against the robust relief obtained and the opportunity to provide near-term compensation to class members.

Settling Plaintiffs' assessment of the strength of their case is based on a detailed factual investigation and economic analysis. In addition to the substantial work done prior to bringing suit, Settling Plaintiffs have received and reviewed over 212,000 pages of discovery documents from this action and Fubo's competitor antitrust suit against Disney in the Southern District of New York, including the SLPTV carriage agreements at the center of this case. *See supra* Background, Part I.

That said, Settling Plaintiffs' case in not without challenges. For one, Settling Plaintiffs allege in their original and amended complaints that Disney's carriage agreements are horizontal restraints that are *per se* unlawful. They also allege that they are direct purchasers of SLPTV services from Disney's co-conspirators, YouTube and DirecTV. The Court has now twice rejected Settling Plaintiffs' horizontal restraint and direct purchaser theories, meaning that (absent reversal on appeal or reconsideration) Settling Plaintiffs would need to proceed on the basis that the restraints at issue are vertical and that Settling Plaintiffs are indirect purchasers. This raises several challenges, including that vertical restraints are almost never considered unlawful *per se* but must be analyzed under the more defendant-friendly "rule of reason." *See Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 9 F.4th 1102, 1108-09 (9th Cir. 2021). In addition, indirect purchaser damages claims must be brought under varying state laws (and only for those states that have repealed the *Illinois Brick* doctrine), and plaintiffs must show that a supracompetitive overcharge was "passed on" through the distribution chain, *In re Optical Disk Drive Prods. Antitrust Litig.*, 785 F. App'x 406, 407 (9th Cir. 2019). The Court has also raised concerns about another aspect of Settling Plaintiffs' theory, stating in its second motion-to-dismiss opinion that "Plaintiffs' allegations regarding the [most-favored-nation] term appear somewhat inconsistent." *Biddle II*, 2024 WL 3171860, at *11.

Like most antitrust class actions, this litigation involves complex legal and factual issues and—in the absence of a settlement—is likely to continue for years, at significant expense to both sides. *See Rodriguez*, 563 F.3d at 966; *In re N.J. Tax Sales Certificates Antitrust Litig.*, 750 F.

17

App'x 73, 81 (3d Cir. 2018) (noting "the complexities inherent in prosecuting a case that sounds in antitrust and that involves a settlement class of thousands"). Among other things, the SLPTV products and market at issue are complicated and highly technical, the alleged exclusionary conduct involves agreements with third parties (potentially requiring substantial nonparty discovery), and establishing liability, classwide impact, and damages is likely to require costly expert testimony. Further, "the class in this case does not have the benefit, like some other antitrust classes, of previous litigation between the defendant[] and the government." *Rodriguez*, 563 F.3d at 966. And while this litigation has been pending for over three years, "a number of serious hurdles remain[]" before trial, *id.*, among them class certification, *Daubert* motions, and potential motions for summary judgment. "Inevitable appeals would likely prolong the litigation, and any recovery by class members, for years." *Id.*

Against the considerable costs, risks, and delay in proceeding with this litigation, the Settlement secures meaningful relief that can be expected to provide concrete benefits to class members in the near term. *See Cal. Pizza Kitchen*, 129 F.4th at 678 ("An early settlement may often be beneficial for the class, as it reduces attorneys' fees, preserves value for the class, and offers immediate compensation for injured class members."). This favors preliminary approval.

### 3. Proposed method of distributing relief to the class

Rule 23(e)(2)(C)(ii) requires a court to consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." The claiming process here is straightforward and "will maximize the effectiveness of the distribution of the settlement proceeds." *Lithium Ion*, 2020 WL 7264559 at *16. Settlement Class members who wish to collect from the settlement fund need only submit a "relatively simple claim form," online or by mail, on which they will report whether they resided in a repealer state during the class period and the duration of their subscription to YouTube TV or DirecTV Stream. Azari Decl. ¶ 42; DP ¶ 10; *see Fitzhenry-Russell v. Coca-Cola Co.*, 2019 WL 11557486, at *7 (N.D. Cal. Oct. 3, 2019) (Davila, J.). They will have the option of receiving payments digitally or by check. Azari Decl. ¶ 42; *see Lithium Ion*, 2020 WL 7264559 at *16. Payment amounts will be calculated once the number of valid claims has been determined, with the goal of complete exhaustion of funds

18

with no reversion to Disney. DP ¶¶ 13-14; *see In re Coll. Athlete NIL Litig.*, 803 F. Supp. 3d 959, 989 (N.D. Cal. 2025) (approving settlement where funds would not revert to defendants).

Further, considering comparable settlements, the proposed settlement administrator (Epiq) estimates a claims rate of 2 to 5%. Azari Decl. ¶ 44. This is well within the norm for large consumer classes. *See In re Facebook Internet Tracking Litig.*, 2022 WL 16902426, at *8 (N.D. Cal. Nov. 10, 2022) (Davila, J.) (2% is "a satisfactory claims rate for class sizes in the millions"), *aff'd sub nom. In re Facebook, Inc. Internet Tracking Litig.*, 2024 WL 700985 (9th Cir. Feb. 21, 2024); *Telescopes*, 2025 WL 1093248, at *2 (2% claims rate); *Shuman v. SquareTrade Inc.*, 2023 WL 2311950, at *4 (N.D. Cal. Mar. 1, 2023) (collecting cases with claims rates from 2% to 4.3%).

The claiming process here will be effective and supports preliminary approval.

### 4.    Proposed award of attorney's fees

Rule 23(e)(2)(C)(iii) requires consideration of "the terms of any proposed award of attorney's fees, including timing of payment." A court must "balance the proposed award of attorney's fees vis-à-vis the relief provided for the class." *Briseño v. Henderson*, 998 F.3d 1014, 1024 (9th Cir. 2021) (quotation marks omitted). This requires scrutinizing fee arrangements for signs of potential collusion. *Id.* at 1026. Called the "*Bluetooth* factors," these signs include: (1) "when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing arrangement,' under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant, rather than the class." *Id.* at 1023 (cleaned up) (quoting *Bluetooth*, 654 F.3d at 947). None of these factors are present here.

The Settlement Agreement contains neither a clear sailing arrangement nor a reverter clause. And Settling Plaintiffs' counsel intend to seek a fee award of no more than 30% of the settlement fund, which is reasonable here. "In class action cases where the defendants provide monetary compensation to the plaintiffs, 'courts have discretion to employ either the lodestar method or the percentage-of-recovery method.'" *Hyundai*, 926 F.3d at 570 (quoting *Bluetooth*, 654 F.3d at 942). In the percentage method, 25% is a "benchmark" for a reasonable fee, which "can be adjusted upward or downward, depending on the circumstances." *Id.* Considering the

19

complexity and risk of this case and the substantial relief obtained for the Settlement Classes, an upward adjustment to 30% would be justified. *See, e.g.*, *In re MacBook Keyboard Litig.*, 2023 WL 3688452, at *13-14 (N.D. Cal. May 25, 2023) (Davila, J.) (awarding 30% of $50 million settlement fund where counsel "achieved excellent results for the class" in the face of "complex and risky" claims taken on a contingency-fee basis); *Telescopes*, 2025 WL 1093248, at *10 (collecting cases) (awarding 33.33% of $32 million fund); *see also In re LinkedIn ERISA Litig.*, 2023 WL 8631678, at *8 (N.D. Cal. Dec. 13, 2023) (Davila, J.) (finding no sign of collusion where counsel would seek no more than 30% of fund).

The reasonableness of a 30% award is supported by a lodestar cross-check. *See Bluetooth*, 654 F.3d at 944-45 (courts using the percentage method are encouraged to cross-check their calculations against the lodestar method); *accord Telescopes*, 2025 WL 1093248, at *9. To date, Settling Plaintiffs' counsel's lodestar is approximately $7,883,423.50, amounting to a lodestar multiplier of approximately 1.9. Bathaee Decl. ¶ 21.[6] This is in line with multipliers affirmed by the Ninth Circuit. *See Hyundai*, 926 F.3d at 572 (collecting cases affirming multipliers of 1.3 to 3.65). And counsel anticipates dedicating a significant amount of time to this case between now and final distribution, which will increase the lodestar and decrease the corresponding multiplier. Bathaee Decl. ¶ 21. In short, the fee arrangements here do not raise the "red flags of potential collusion" under *Bluetooth*. *Briseño*, 998 F.3d at 1026.

### 5.    Agreements required to be identified under Rule 23(e)(3)

There are no agreements between the parties beyond the terms set forth in the Settlement Agreement. Accordingly, this consideration under Rule 23(e)(2)(C)(iv) does not apply.

### D.    The Settlement Treats Class Members Equitably Relative to Each Other

Rule 23(e)(2)(D) asks whether the proposed settlement "treats class members equitably relative to each other." The Settlement does. Funds will be distributed *pro rata* to class members who submit claims, based on the combined duration of each claimant's subscription(s) to

---

[6] Settling Plaintiffs' counsel have incurred costs of approximately $119,951.32 to date. Bathaee Decl. ¶ 22.

YouTube TV and DirecTV Stream. DP ¶ 12. This approach allows claimants who are members of both Settlement Classes—and thus allegedly overcharged for both YouTube TV and DirecTV Stream—to receive compensation with respect to each service. *Id.* Further, in accordance with the Settlement Agreement, funds will be allocated between Settlement Class members in *Illinois Brick* repealer and non-repealer states. SA ¶ 24. Settling Plaintiffs propose that 90% of the Net Settlement Fund be allocated to class members in repealer states and 10% be allocated to those in non-repealer states to account for the differing strength of their claims. DP ¶ 9.

*Pro rata* distribution is generally considered an equitable way to compensate class members, "especially in antitrust class actions." *Telescopes*, 2025 WL 1093248, at *6 (collecting cases). "A *pro rata* allocation treats all Settlement Class Members fairly because their recovery is tied to the volume and cost of their purchases, the number of other qualified Settlement Class Members making claims against the settlement fund, and the size of the overall fund." *Id.*

It is also equitable to differentially allocate the settlement funds between repealer and non-repealer state class members. In approving a similar 90/10 repealer/non-repealer distribution plan, Judge Gonzales Rogers held that "[i]t is appropriate for class members from non-repealer states to receive a limited recovery because, although their claims were relatively weak compared to repealer state class members, they were still active litigants in the case, and their claims were not finally foreclosed." *Lithium Ion*, 2020 WL 7264559, at *16; *accord In re Lithium Ion Batteries Antitrust Litig.*, 853 F. App'x 56, 58 (9th Cir. 2021) (affirming 90/10 allocation); *see also In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, 2023 WL 8437034, at *13 (E.D. Pa. Dec. 4, 2023) (approving 90/10 repealer/non-repealer allocation). Though Settlement Class members from non-repealer states would not be able to bring indirect purchaser claims for their alleged injuries here, they have also asserted *direct* purchaser claims for damages under Section 1 of the Sherman Act. The Court dismissed those claims, but they could potentially be revived on appeal or reconsideration, *see* Fed. R. Civ. P. 54(b), and are not "finally foreclosed."

Finally, while the Settlement provides that Settling Plaintiffs may apply for service (*i.e.*, incentive) awards of up to $5,000 each, SA ¶¶ 1(aa), 23(e), reasonable incentive awards "do not constitute inequitable treatment of class members," *Perks v. Activehours, Inc.*, 2021 WL 1146038,

at *6 (N.D. Cal. Mar. 25, 2021). Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Telescopes*, 2025 WL 1093248, at *11 (quoting *Rodriguez*, 563 F.3d at 958-59). An incentive award of $5,000 is "presumptively reasonable." *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 592 (N.D. Cal. 2015) (Davila, J.). The Settlement treats class members equitably.

*    *    *

Because the Settlement meets the Rule 23(e)(2) requirements, the Court "will likely be able to approve" it at the final-approval stage, Fed. R. Civ. P. 23(e)(2). The Settlement should be preliminarily approved.

## III.    THE DISTRIBUTION PLAN SHOULD BE PRELIMINARILY APPROVED

The Settlement Agreement specifies that any proposed distribution plan is not part of the Agreement and is "to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement." SA ¶ 28; *see Lithium Ion*, 2020 WL 7264559, at *25 (collecting cases) (court may approve distribution plan separately). "Approving a plan for the allocation of a class settlement fund is governed by the same legal standard that applies to the approval of the settlement terms: that the distribution plan is 'fair, reasonable and adequate.'" *Edwards v. Nat'l Milk Producers Fed'n*, 2017 WL 3623734, at *8 (N.D. Cal. June 26, 2017) (citation omitted), *aff'd sub nom. Edwards v. Andrews*, 846 F. App'x 538 (9th Cir. 2021); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992).

Settling Plaintiffs' proposed distribution plan (Bathaee Ex. 2) is fair, reasonable, and adequate. As discussed above, *pro rata* distribution treats class members equitably, and the 90/10 allocation between repealer-state and non-repealer-state class members is justified by the relative strength of their claims. *See supra* Argument, Part II.D. The amounts to be paid to claimants will be calculated once the number submitting valid claims has been determined, with the goal of complete exhaustion of funds, and there will be no reversion to Disney. DP ¶¶ 13-14. To minimize administrative expense, fixed amounts will be calculated in one-year tiers corresponding to the combined time as a subscriber to YouTube TV and DirecTV Stream. *Id.* ¶ 13. A similar

1    methodology was approved of in *Edwards*, which also involved an indirect purchaser settlement

2    class in the millions (73 million) and a fixed common fund ($52 million). *See* 2017 WL 3623734,

3    at *8-9. The proposed distribution plan should be approved.

4    ## IV.    THE CLASS NOTICE PLAN SHOULD BE APPROVED

5        Rule 23 requires that a court approving a class action settlement "direct notice in a

6    reasonable manner to all class members who would be bound by the proposal." FED. R. CIV. P.

7    23(e)(1)(B). For a Rule 23(b)(3) class, the court must also "direct to class members the best notice

8    that is practicable under the circumstances, including individual notice to all members who can

9    be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). Settlement notice must

10    "describe the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

11    investigate and to come forward and be heard." *Online DVD*, 779 F.3d at 946 (cleaned up).[7] In

12    accordance with this District's Procedural Guidance for Class Action Settlements, Settling

13    Plaintiffs propose a comprehensive individual notice plan designed by experienced settlement

14    administrator Epiq.[8]

15        Epiq has designed a notice plan that, in its professional view, is "the best notice practicable

16    under the circumstances." Azari Decl. ¶ 10. Direct notice by email will be sent to all identified

17

18    [7] Disney is responsible for providing all notices required by the Class Action Fairness Act, 28

19    U.S.C. § 1715, and will do so no later than 10 days after the Settlement Agreement is filed with

20    the Court. SA ¶ 55; *see* 28 U.S.C. § 1715(b).

21    [8] Epiq was chosen after a competitive bidding process, based on the strength of its proposal and

22    its deep experience administering similar settlements. Bathaee Decl. ¶ 23. Epiq's experience, data

23    security procedures, and anticipated notice costs are detailed in the attached Declaration of

24    Cameron R. Azari, Esq. Azari Decl. ¶¶ 4-17, 47. Per this Court's directive in *Cabrera v. Google*

25    *LLC*, 2025 WL 2494429, at *5 (N.D. Cal. Aug. 29, 2025), Epiq attests that "it will not receive

26    any undisclosed financial compensation in connection with any existing or future relationships

27    with banking institutions in connection with the settlement fund and/or the administration of the

28    settlement of this matter." Azari Decl. ¶ 43.

Settlement Class members for whom a valid email address is available, and a postcard notice will be sent by first-class mail to all identified Settlement Class members with a physical mailing address for whom a valid email address is not available or for whom an email notice is undeliverable after multiple attempts. Azari Decl. ¶¶ 22-29; *see Online DVD*, 779 F.3d at 941, 946-47 (approving similar approach). If contact information is unavailable for a significant portion of Settlement Class members, supplemental notice will be provided via the Internet. *Id.* ¶¶ 30-38. Class member contact information will be obtained from nonparties Google (for YouTube TV subscribers) and DirecTV (for DirecTV Stream subscribers), who were subpoenaed and have agreed to produce such information promptly after preliminary approval. *Id.* ¶ 22; Bathaee Decl. ¶ 24. Epiq estimates this approach will reach approximately 90% of identified Settlement Class members. Azari Decl. ¶ 19.

Notice will be provided in plain terms and easy-to-understand language. All forms of notice will include information about the nature of the action, the definition of the Settlement Classes, the settlement relief, the rights of Settlement Class Members under the Settlement (including their right to object or opt out), and the date and location of the final approval hearing. *See* Azari Exs. 2-4 (email, postcard, and long-form notices). Epiq will maintain a dedicated settlement website that will post all notice documents and relevant filings, including the long-form notice, claim form, Settlement Agreement, preliminary approval order, and other case-related documents. Class members will be able to file claims through the website or by mail. Azari Decl. ¶¶ 39, 42 & Ex. 5 (claim form). A toll-free automated helpline will be available 24 hours per day, 7 days per week. *Id.* ¶ 40.

Settling Plaintiffs' notice plan meets the requirements of Rule 23 and should be approved.

## V.    THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING AND RELATED DATES

Settling Plaintiffs propose the following schedule for class notice and final approval:

| Event | Time |
|---|---|
| **Notice Date**: Notice completed | 98 days after issuance of preliminary approval order |
| **Opt-Out / Claims Deadline** | 63 days after Notice Date |
| **Motion Deadline:** (1) Motion for Final Approval of Settlement (incl. Service Awards) and Distribution Plan and (2) Motion for an Award of Attorney's Fees and Costs | 49 days after Opt-Out / Claims Deadline |
| **Objection Deadline:** Objections to (1) Settlement and Distribution Plan and (2) Motion for an Award of Attorney's Fees and Costs | 35 days after Motion Deadline |
| **Reply Deadline:** (1) Replies in Support of Motion for Final Approval of Settlement and Distribution Plan and (2) Reply in Support of Motion for an Award of Attorney's Fees and Costs | 28 days after Objection Deadline |
| **Final Approval Hearing** re (1) Motion for Final Approval of Settlement and Distribution Plan and (2) Motion for an Award of Attorney's Fees and Costs | To be set by the Court |

## CONCLUSION

The Settlement and proposed distribution plan readily meet the standard for preliminary approval. Settling Plaintiffs therefore respectfully request that the Court enter the attached proposed order (1) preliminarily certifying the proposed classes for settlement purposes, (2) provisionally appointing Settling Plaintiffs as class representatives, (3) appointing Bathaee Dunne LLP as interim lead counsel for the Settlement Classes, (4) preliminarily approving the Settlement, (5) preliminarily approving the proposed distribution plan, (6) approving the proposed notice plan and directing notice to the Settlement Classes, (7) appointing Epiq Class Action & Claims Solutions, Inc., as the settlement administrator, and (8) setting a fairness hearing for final approval of the Settlement (including service awards) and distribution plan and to consider the motion for an award of attorney's fees and costs.

1    Dated: March 5, 2026                    Respectfully submitted,

2                                            */s/ Yavar Bathaee*

3                                            Yavar Bathaee

4                                            **BATHAEE DUNNE LLP**
                                             Yavar Bathaee (CA 282388)
5                                            yavar@bathaeedunne.com
                                             Andrew C. Wolinsky (CA 345965)
6                                            awolinsky@bathaeedunne.com
                                             Priscilla Ghita (*pro hac vice*)
7                                            pghita@bathaeedunne.com
                                             445 Park Avenue, 9th Floor
8                                            New York, NY 10022
                                             Tel: (332) 322-8835

9                                            Brian J. Dunne (CA 275689)
                                             bdunne@bathaeedunne.com
10                                           Edward M. Grauman (*pro hac vice*)
                                             egrauman@bathaeedunne.com
11                                           Kaki J. Johnson (*pro hac vice*)
                                             kjohnson@bathaeedunne.com
12                                           Bryce Talbot (*pro hac vice*)
                                             btalbot@bathaeedunne.com
13                                           901 South MoPac Expressway
                                             Barton Oaks Plaza I, Suite 300
14                                           Austin, TX 78746
                                             Tel: (213) 462-2772
15
                                             Allison Watson (CA 328596)
16                                           awatson@bathaeedunne.com
                                             3420 Bristol Street, Suite 600
17                                           Costa Mesa, CA 92626
                                             Tel.: (213) 462-2772
18

19                                           *Interim Lead Counsel for the YouTube TV
                                             and DirecTV Stream Classes*
20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**APPENDIX**

**Chart of Comparable Settlements**

| | Biddle v. Disney (proposed) | In re Online DVD Rental[1] | In re Telescopes (IPP)[2] | In re Lithium Ion Batteries (IPP)[3] | Edwards v. Nat'l Milk Producers[4] | In re Pork (Smithfield Settlement)[5] |
|---|---|---|---|---|---|---|
| **Claims Being Released** | IPP claims | Federal and state antitrust claims | IPP claims | IPP claims | IPP claims | IPP claims |
| **Total Settlement Fund** | $50M | $27.25M | $32M | $113.45M | $52M | $75M |
| **Total Number of Class Members** | ~17M[6] | 35M | 4M | "In the millions" | 73M | Unknown |
| **Total Number of Class Members to Whom Notice Was Sent** | | 25,158,204 notices successfully delivered by email and 9,526,953 notices mailed by standard mail (~80% successfully delivered) | 76,222 notices successfully delivered by standard mail, 47,026 notices successfully delivered by email, and "over 50,000" direct notices sent by Amazon to class members | 8,644,344 notices successfully delivered by email | No direct notice | 17,560,555 notices successfully delivered by email |
| **Methods of Notice** | Email, mail, website, possible supplemental internet advertising, helpline & contact address | Email, mail, internet advertising, publication, website, helpline & contact address | Email, mail, publication, website, helpline & contact address | Email, mail, internet advertising, publication, website, helpline | Internet advertising, publication, website, helpline | Email, internet advertising, publication, website, helpline |
| **Number of Claim Forms Submitted** | | 1,183,444 | 81,158[7] | >1M claims for more than 100M individual batteries | >3.8M | Unknown |
| **Average Recovery Per Class Member[8]** | | ~$0.78[9] | ~$8.00[10] | Unknown | ~$0.71[11] | Unknown |

[1] *In re Online DVD Rental Antitrust Litig.*, 09-md-2029 (N.D. Cal.), Dkt. 609, Final Approval of Wal-Mart Settlement; Dkt. 566, Motion for Final Approval; Dkt. 566-1, Declaration of Tore Hodne re Notice Plan; Dkt. 566-2, Declaration of Shannon Wheatman re Notice Plan. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015).

[2] *In re Telescopes Antitrust Litig.*, No. 20-cv-03639 (N.D. Cal.), Dkt. 419, Final Approval of Settlement; Dkt. 404, Motion for Final Approval; Dkt 404-3, Declaration of Angelique Dizon re Notice Plan; Dkt. 407, Reply in Support of Motion for Final Approval.

[3] *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420 (N.D. Cal.). Settlement proceeded in three rounds. The information in this column represents the total settlement. Round 2 was the last round to be finally approved. Dkt. 2681, Final Approval of Round 2 Settlement; Dkt. 2613, Motion for Final Approval of Round 2 Settlement; Dkt. 2613-5, Declaration of Cameron Azari re Notice Plan; Dkt. 2516, Final Approval of Round 3 Settlement.

[4] *Edwards v. Nat'l Milk Producers Fed'n*, No. 11-cv-04766 (N.D. Cal.), Dkt. 486 Final Approval of Settlement; Dkt. 485, Order Granting Fees and Costs.

[5] *In re Pork Antitrust Litig.*, No. 18-cv-1776 (D. Minn.), Dkt. 1903, Final Approval of Smithfield Settlement; Dkt. 1904, Order Granting Motion for Fees and Costs; Dkt. 1859, Motion for Final Approval of Smithfield Settlement; Dkt. 1861, Declaration of Eric Schachter re Notice Plan.

[6] Estimated, with final class size to be determined prior to final approval.

[7] Number of claims as of March 21, 2025. Claims deadline ran on May 20, 2025. Dkt. 407, Reply in Support of Motion for Final Approval.

[8] Based on the total settlement fund.

[9] $27,250,000 ÷ 35,000,000 class members = $0.78

[10] $32,000,000 ÷ 4,000,000 class members = $8.00

[11] $52,000,000 ÷ 73,000,000 class members = $0.71

| | | | | | | |
|---|---|---|---|---|---|---|
| **Average Recovery Per Claimant**[12] | | ~$23.03[13] | ~$394.29[14] | <$113.45 per claimant[15]<br><br><$1.13 per battery[16] | ~$13.68[17] | Unknown |
| *Cy Pres* | Any remaining funds will be distributed through *cy pres* or escheat to government | N/A | Any remaining funds | N/A | N/A | N/A |
| **Administrative Costs** | ~$800,000 to $2M (notice)[18] | $4.5M | Unknown | Unknown | Not more than $2M | Unknown |
| **Attorney's Fees and Costs** | Fees: Up to $15M to be sought<br>Costs: $119,951.32 to date | Fees: $6,812,500<br>Costs: $1.7M | Fees: $10,666,667<br>Costs: $771,461 | Fees: $33,829,176<br>Costs: $6,751,735 | Fees: $13M<br>Costs: ~$2.4M | Fees: $24.975M<br>Costs: $2.527M |

---

[12] Based on the total settlement fund.
[13] $27,250,000 ÷ 1,183,444 claims = $23.03
[14] $32,000,000 ÷ 81,158 claims = $394.29
[15] $113,450,000 ÷ 1,000,000 claims = $113.45
[16] $113,450,000 ÷ 100,000,000 batteries = $1.13
[17] $52,000,000 ÷ 3,800,000 claims = $13.68
[18] Azari Decl. ¶ 48.